DENNIS PALKOSKI, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. JOSE M. GARCIA, *ET AL.*, DEFEND-ANTS-APPELLANTS AND CROSS-RESPONDENTS.

Argued June 6, 1955—Decided June 27, 1955.

*Mr. Paul T. Huckin* argued the cause for appellants and cross-respondents (*Messrs. Huckin & Huckin,* attorneys).

*Mr. James A. Major* argued the cause for plaintiff-respondent and cross-appellant (*Mr. John A. Christie*, attorney).

The opinion of the court was delivered by

HEHER, J.  The defendants are Jose M. Garcia and three corporations organized by him primarily for the construction and the ultimate operation of garden apartment houses, Northern Valley Builders Supply Company, American Home Builders, and Brookview Gardens, Inc.  Northern Valley undertook to supply the lumber for the project; American was a construction company; and Brookview was the builder of the apartment houses, five in number, accommodating 109 families, and the owner-operator thereafter.

In 1946, the plaintiff Palkoski assumed the mangement of a lumber yard for Northern Valley, at a fixed weekly salary; and in this capacity he provided the lumber and materials for the construction of the Brookview apartments. Later on, at the instance of Garcia he also superintended construction for American; but he was not at any time a salaried employee of Brookview.  There was no increase of salary for the extra service rendered to American, although there was at some period of the employment a salary increase of $10 per week.  His salary was paid by checks of Northern Valley, but on the corporate books part of the salary was allocated to Brookview, a practice unknown to him, Palkoski said.  His brief says that the "companies overlapped," and this allocation of salary was an "intercompany charge."  He was vice-president of all three corporations, holding but a single share of stock in each, and Garcia was the principal stockholder of each of the companies.  And it is suggested that there was an integration of corporate endeavors for the fulfillment of the construction project particularly relevant to one of the major issues.

Palkoski testified that he "first became actively interested in any of the affairs" of Brookview when Garcia, complaining of the number of apartment vacancies and the demand made by Brookview's real estate broker, one Wardell, for

an increase of the then current rental commission of $50 an apartment, agreed to pay Palkoski "$50 for each apartment that was rented" by him, the service to be performed after the hours of his regular employment with Northern Valley.

In June 1952, Palkoski's services were terminated; and thereupon he brought this action for the recovery of $2,900 allegedly advanced by him to American; $3,944 for advances to Northern Valley and unpaid salary checks; and $5,200 for commissions on apartment rentals, 104 in all, made on Brookview's behalf. Garcia, himself, was also sued as individually responsible for all the claims thus made against the corporations.

There was a verdict of $5,200 against Brookview for rental commissions; $2,900 against Garcia for advances found by the jury to have been made to him individually; and $2,743.38 against Northern Valley for advances to it.

The Appellate Division reversed the judgment for rental commissions as untenable for want of the statutory qualification of plaintiff as a real estate broker, *R. S.* 45:15–1, *et seq.*, directed judgment for Brookview on this count, and affirmed the judgments otherwise. 32 *N. J. Super.* 343 (1954).

The case is here by certification on cross-petitions.

It is insisted that Palkoski has a legally enforceable right to commissions for the apartment rentals even though he was not a licensed real estate broker when the services were rendered.

It is said that Garcia "organized, owned and operated the three corporate defendants"; "his will was the will of the corporations"; "he hired the plaintiff," who "originally managed the lumber yard, later became superintendent of construction 'and did some work around the apartment project'"; "salary checks were issued by one company, but the amount was allocated in part to the others"; Palkoski was also vice-president of all three corporations, and thus Garcia "was engaged in one commercial venture," each corporation operating "in its allotted sphere," all three "used as instru-

ments to accomplish," as the "end result," "the operation of a garden apartment," and if the "overall picture" be considered, it is clear "the additional duties had been given to one employed in the common enterprise," and so the Appellate Division, overlooking the "economic realities" and the relationship between Palkoski and Garcia, unduly qualified the statutory exemption of corporations in the rental of their own property by requiring that Palkoski "show the rental of apartments was either his duty or incidental to his duty as an employee of Brookview."

Reference is made to *L.* 1953, *c.* 229, amending *R. S.* 45:15-3, to provide that in the "sale of lots pursuant to the provisions of this article," the term "real estate broker" shall also include any person, partnership, association or corporation employed by or on behalf of the owner or owners of lots or other parcels of real estate, at a stated salary, or upon a commission, or upon a salary and commission, or otherwise, to sell such real estate, or any parts thereof, in lots or other parcels, and who shall sell or exchange, or offer or attempt or agree to negotiate the sale or exchange, of any such lot or parcel of real estate"; and it is argued that "the increased scope given to the term 'real estate broker' is limited to the sale of lots," and "If the law precluded a person from recovering compensation earned by the renting of corporate property, or the sale thereof, prior to 1953 it is hard to believe that the Legislature would change the statute so as to preclude recovery if there was the sale of certain property without also applying the amendment to the rental of property."

■ *R. S.* 45:15-4 provides that the article shall not apply to "any person, firm, partnership, association or corporation who, as a *bona fide* owner or lessor, shall perform any of the" proscribed "acts with reference to property owned by him * * *." A "real estate broker" requiring a license to engage in the brokerage business is defined, *R. S.* 45:15-3, as "a person, firm or corporation who, for a fee, commission or other valuable consideration, * * * rents, or offers or attempts to negotiate a * * * rental of real estate or

an interest therein, * * *"; and a "real estate salesman," as "any person who, for compensation, valuable consideration or commission, or other thing of value, is employed by a licensed real estate broker to * * * lease or rent, or offer to lease or rent any real estate for others, or who is an employee, agent or associate of any person, firm, corporation or association owning or leasing lands, and offering such lands at either public or private sale as a developer where such development consists of more than twenty lots."

The point made seems to be that a corporation acts only through agents and servants, and so it is implicit in the exception of *section 4, supra,* that an employee of Brookview engaged in such service in its behalf is also within the exception.

But, even so, Palkoski was not an employee of Brookview within the intendment of the statutory exception. Indeed, he was not an employee at all in the strict etymological sense, but merely a broker engaged in renting apartments on a commission basis, the service to be performed after the hours of his regular service to Northern Valley. He was employed by Brookview to replace a licensed broker who was paid a commission of $50 for each apartment rental, but had demanded more, even though there were many vacancies. Palkoski was retained for the selfsame service on the selfsame terms "at times when he was able to, bearing in mind that he had to work during the day for Northern Valley, * * * late afternoons and evenings, and Saturdays and Sundays." On the witness stand, he conceded that this service "was not part" of his "regular duties as an employee" of either Northern Valley or Brookview; that was "something completely apart." It matters not that he was then vice-president of Brookview. He bore the same relationship to Northern Valley and to American. He was under no duty to render service to Brookview as such; and he was in receipt of no compensation for service to Brookview; nor is there a duty to render compensation unless it be for the rental of apartments as here contended.

The 1953 amendment of section 3 does not signify a different legislative understanding of the sense of the pre-existing statute. Where the "sale of lots" is concerned, the "real estate broker" subject to license includes any person or corporation employed by the owner of the lots "at a stated salary, or upon a commission, or upon a salary and commission, or otherwise, to sell such real estate, or any parts thereof, in lots or other parcels." In other words, where lots are involved, an "employee" of the corporate owner is also under the requirement of license, whether the employment be on a salary or a commission basis. But that does not mean that under the prior act the corporate owner of real property could enlist the services of an unlicensed broker, not in its regular employ, to sell or rent its property, as a hiring or employment not within the licensing act. Now, in the sale of lots, even a regular salaried employee of the corporation is under the statutory disability unless he is licensed. There is a difference between a regular employee engaged in the pursuit of the corporate employer's general business and an outsider retained to render a purely brokerage service that is made the subject of license in the common interest. The case at hand is in the latter category.

Such is the spirit and the indubitable reason of the law, considered as an integrated whole. As we have said before, it is not the words but the internal sense of the law that controls. The intention comes from a general view of the whole of the expression rather than from the literal sense of particular terms. *Caputo v. Best Foods, Inc.,* 17 *N. J.* 259 (1955). See also *McLaughlin v. Mayor, etc., of City of Newark,* 57 *N. J. L.* 298 (*Sup. Ct.* 1894).

Generally, exceptions to a legislative measure are to be strictly but reasonably construed, consistent with the manifest reason and purpose of the law. *Wright v. Vogt,* 7 *N. J.* 1 (1951); *New Jersey State Board of Optometrists v. S. S. Kresge Co.,* 113 *N. J. L.* 287 (*Sup. Ct.* 1934), affirmed 115 *N. J. L.* 495 (*E. & A.* 1935).

▮ The defendant Garcia makes the point of variance in respect of the claim of $2,900 for which there was a verdict and judgment against him individually.

The contention is that the complaint alleged an advance or loan of that sum to American and a collateral promise by Garcia "to guarantee repayment," unenforceable in law for want of the writing required by the statute of frauds, but in the course of the trial evidence was received tending to show the loan was made to Garcia and his direct promise of repayment, and so, it is said, this defendant was deprived of the benefit of the defense of the statute.

Garcia's motion, at the close of plaintiff's case, to dismiss for variance was denied. While there was no formal amendment, there is no showing of surprise and prejudice, assuming the point of variance to be well taken. There was no motion for a continuance to prepare for the case newly made. Garcia was fully informed as to the circumstances; the money was deposited in his personal bank account, and he made a transfer of the identical sum to Brookview's bank account, and Brookview, in turn, drew a check on its account to one Nygard, in payment of carpenter work he had done for Brookview. Plaintiff testified, without objection, that he had made the deposit in Garcia's personal bank account, as a loan to Garcia according to agreement.

We find no prejudicial error in the instruction given the jury to disregard certain remarks of defenants' counsel bearing upon the "credibility of plaintiff." There is no occasion to add to what Judge Francis has said on this point.

And there was no harmful error in the rulings on evidence, challenged only as "argumentative."

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For reversal*—None.