ALFRED J. LOBODA, EUGENE J. SCHILLER, MURIEL E.
NADLER AND JOSEPH J. SMITH, PLAINTIFFS-APPEL-
LANTS, v. TOWNSHIP OF CLARK, A MUNICIPAL CORPO-
RATION OF UNION COUNTY, NEW JERSEY, WILLIAM
J. MAGUIRE, JOHN DOENZELMANN, KARL KUMMER
AND NORMA B. DAVENPORT, AND DEPARTMENT OF
CIVIL SERVICE, DEFENDANTS-RESPONDENTS.

Argued May 6, 7, 1963—Decided July 8, 1963.

*Mr. Seymour Margulies* argued the cause for plaintiffs-appellants (*Messrs. Levy, Lemken and Margulies,* of counsel and on the brief; *Messrs. Rubenstein & Glick,* attorneys).

*Mr. Irvine B. Johnstone, Jr.* argued the cause for defendants-respondents, Township of Clark and William J. Maguire.

*Mr. William Miller* argued the cause for defendants-respondents John Doenzelmann, Karl Kummer and Norma B. Davenport.

*Mr. William L. Boyan,* Deputy Attorney General argued the cause for respondent Department of Civil Service, State of New Jersey (*Mr. Arthur J. Sills,* Attorney General, attorney).

The opinion of the court was delivered by

HANEMAN, J. At a general election held on November 3, 1959, the electorate of the Township of Clark adopted Mayor-Council Plan "F" (*N. J. S. A.* 40:69A–74–80) of the Faulkner Act, *N. J. S. A.* 40:69A–1, *et seq.* On November 8, 1960, pursuant to *N. J. S. A.* 40:69A–77, 78 and 205(b), the voters of the township elected a mayor and governing body. At the same election, as the result of a referendum held pursuant to a petition filed in August 1960, the provisions of the Civil Service Act, *R. S.* 11:19–1, *et seq.*, were adopted by said voters. Plan "F" became effective on "the first day of January next following the first election of officers," *i. e.,* January 1, 1961. *N. J. S. A.* 40:69A–205(c). Joseph J. Smith, having been designated Director of the Department of Public Works and Engineering subsequent to the effective date of said plan, made the following appointments of plaintiffs on June 27, 1961: Alfred J. Loboda as Building Inspector, Eugene J. Schiller (who died on May 18, 1962) as Plumbing Inspector, and Muriel E. Nadler as clerk in Smith's department. On that same date, Smith advised John Doenzelmann, Karl Kummer, and

Norma B. Davenport that their respective employments as Building Inspector, Plumbing Inspector, and clerk would be terminated on June 30, 1961. The defendants refused to vacate their offices, claiming that since they had continuously been employed from a time prior to the filing of the petition in August 1960, which initiated the proceedings that eventually led to the adoption of the Civil Service Act in the township, they were protected from summary removal by the tenure provisions of *N. J. S. A.* 11:21–6. Plaintiffs filed an action in lieu of prerogative writs in the Law Division, demanding the removal of said defendants from their respective employments, and a judgment that the plaintiffs were legal temporary appointees to their respective positions or offices above mentioned, subject to certain examinations which they would be required to take pursuant to Civil Service requirements. See *R. S.* 11:23–1, *et seq.* Answers having been filed, the parties made a motion and a cross-motion for summary judgment. The trial court granted defendants' cross-motion. 74 *N. J. Super.* 159 (1962). The four above-named plaintiffs appealed to the Appellate Division. Prior to argument there, this court certified the appeal upon its own motion. *R. R.* 1:10–1(a).

Plaintiffs argue that the offices held by defendants were abolished and that their terms thereto ceased and determined on January 1, 1961, the date that the Faulkner Act became effective in the Township of Clark. They bottom their conclusion upon a literal reading of *N. J. S. A.* 40:69A–207. This section states, in part:

"At 12 o'clock noon on the effective date of an optional plan adopted pursuant to this act, all offices then existing in such municipality shall be abolished and the terms of all elected and appointed officers shall immediately cease and determine; provided, that nothing in this section shall be construed to abolish the office or terminate the term of office of any member of the board of education, trustees of the free public library, commissioners of a local housing authority, municipal magistrates or of any official or employee *now* protected by any tenure of office law, or of any policeman, fireman, teacher, principal or school superintendent whether or not protected by a

tenure of office law. If the municipality is operating under the provisions of Title 11 of the Revised Statutes (Civil Service) *at the time of the adoption of an optional plan under this act,* nothing herein contained shall affect the tenure of office of any person holding any position or office coming within the provisions of said Title 11 as it applies to said officers and employees. If the municipal clerk has, prior to the effective date of the optional plan, acquired a protected tenure of office pursuant to law, he shall become the first municipal clerk under the optional plan." (Emphasis supplied)

They assert that since the referendum involving the adoption of Plan "F" of the Faulkner Act was held on November 3, 1959, and the referendum involving the adoption of the Civil Service Act was held on November 8, 1960, Clark Township was not operating under the Civil Service Act either at the time when the Faulkner Act became an effective law of this State in 1950 (they construe the word "now" in the first sentence of section 207 to mean the enactment date of the Faulkner Act, and for this purpose, they include the Civil Service Act within the reference to a "tenure of office law"), or "at the time of the adoption of an optional plan" by the township. Therefore, it follows, they say, that the exemptive provisions of section 207 do not protect the defendants from the general provision of that section which stipulates that all offices existing on the effective date of Plan "F" are abolished and that the terms of all elected and appointed officers then cease and determine.

Contrarily, defendants argue that they obtained tenure to these offices upon the adoption of the Civil Service Act on November 8, 1960 by virtue of *N. J. S. A.* 11:21–6, which reads:

"Hereafter, all officers, clerks and employees in the employ of any * * * municipality * * * at the time of the adoption of this subtitle by such * * * municipality * * *, coming within the competitive or noncompetitive class of the civil service, except such as may be appointed between the time of the filing of the petition for the adoption of this subtitle and the holding of the referendum for the adoption thereof in such * * * municipality * * *, shall continue to hold their offices or employments, and shall not be removed therefrom except in accordance with the provisions contained in this subtitle relative to the removal of persons

in the competitive or noncompetitive class, it being the intention hereby to include any and all such officers, clerks, employees and laborers within the classified service of a * * * municipality * * *, and to be subject in all respects to the provisions of this subtitle."

They allege that such tenure was protected by the provisions of *N. J. S. A.* 40:69A–207. Although the Civil Service exception in section 207 reads "at the time of the adoption of an optional plan," defendants contend that it must be construed to mean "at the time of the effective date of an optional plan." They conclude that in view of this construction, the Civil Service Act, which was adopted in the Township prior to the effective date of the Faulkner Act, causes their tenure, created by *N. J. S. A.* 11:21–6, to continue their employment rights unless terminated in the manner provided by *R. S.* 11:19–1, *et seq.*

Therefore, it becomes necessary to ascertain the legislative intent in enacting *N. J. S. A.* 40:69A–207.

█ A majority of this court has held that *N. J. S. A.* 40:69A–1, *et seq.* has two objectives, (1) the abolition of all offices existing in the municipality on the effective date of the adopted plan, and (2) the termination of all terms of office on that date, so that a "clean slate" of elected and appointed personnel could be created by the first governing body elected under the Faulkner Act. *The Broadway National Bank of Bayonne v. The Parking Authority of the City of Bayonne,* 40 *N. J.* 227 (1963). A minority of this court concluded in *The Broadway National Bank of Bayonne, supra,* that the Faulkner Act was concerned primarily with a change of governmental structure and, hence, with the abolition of existing offices, and incidentally thereto with the termination of the terms of incumbents of such offices. What follows applies to either thesis as, generally, the abolishment of an office automatically ends the term of the incumbent. *The Broadway National Bank of Bayonne, supra,* at *p.* 234.

We shall initially consider the first sentence of *N. J. S. A.* 40:69A–207. It is there provided that on the effective date

of a plan, "all offices then existing * * * shall be abolished and the terms of all elected and appointed officers shall immediately cease and determine." It is plain that the statute proposed, minimally, to grant elected officials the free and untrammeled discretion to create a new municipal governmental structure and to that end to establish only such offices as it conceived were necessary, regardless of the offices that had existed under the extinct charter.

However, the Legislature saw fit to create an exception to this universal nullification by providing that "nothing in this section shall be construed to abolish the office or terminate the term of office * * * of any official or employee *now* protected by any *tenure of office law.*" (Emphasis supplied) As a result, not only were the offices occupied by persons enjoying tenure specifically saved from extinction, including the offices of Civil Service employees (if this exception is applicable to them), but those persons who enjoyed tenure in the occupation of such offices were also continued in the employment capacities in which they had theretofore served regardless of any new title the job may have acquired under the new government. None of the parties to this litigation disputes this construction.

 Plaintiffs argue, however, that the defendants do not fall within the class of persons whose offices and employments are thus saved because their tenure under the Civil Service Act was not effective on the date that the Faulkner Act became a statute. They reason that the word "now," as it appears in the exception, refers to the date when that statute became an operative law of the State in 1950, and since at that time the defendants were not in their respective employments, nor was Civil Service operative in the municipality, whatever tenure rights accrued to them later were not sufficiently timely to afford the defendants protection under this exception. The defendants, on the other hand, assert that that word should be accorded an ambulatory meaning and encompass an *in futuro* application to the time when the act becomes effective in the municipality. To accept

plaintiffs' construction is to question the statute on the grounds that it constitutes special legislation in violation of the *New Jersey Constitution, Art.* IV, § 7, ¶¶ 7 and 9 (5), (13). See *Miele v. McGuire*, 31 *N. J.* 339 (1960), and the cases concerning this point discussed therein. Conceding the possibility of a twofold meaning, we conceive that the more logical interpretation of "now" is to accord to it the ambulatory construction which denotes the time of application of the statute rather than the date of its passage by the Legislature and approval by the Governor. Furthermore, to remain consistent with the other provisions of the first sentence of section 207 which generally abolish offices and terms of office on the effective date, and preserve certain offices and terms of office which could otherwise be abolished on that same date, we construe the time of the application of the Faulkner Act to which "now" refers to be the effective date of that act in the municipality, and not the date of its adoption. *Cf., Steel v. Freeholders of Passaic*, 89 *N. J. L.* 609 (*E. & A.* 1916); *Stark v. Fell*, 124 *N. J. L.* 475 (*Sup. Ct.* 1940). Under the above discussed exception, therefore, all offices occupied by employees under any tenure of office law at the time of the effective date of the Faulkner Act in Clark Township were exempted from abolition and such employees were entitled to continue in their respective municipal capacities.

The Civil Service Act being a tenure of office law, *Devlin v. Cooper*, 124 *N. J. L.* 155 (*Sup. Ct.*), affirmed 125 *N. J. L.* 414 (*E. & A.* 1940); *Beirne v. Gangemi*, 74 *N. J. Super.* 557, 565 (*App. Div.* 1962), certif. denied 38 *N. J.* 307 (1962), offices of those employees who fell within the confines of *N. J. S. A.* 11:21-6, and their respective terms, ordinarily would be encompassed within that category. However, the second sentence of section 207 reads:

"If the municipality is operating under the provisions of Title 11 of the Revised Statutes (Civil Service) *at the time of the adoption of an optional plan under this act*, nothing herein contained shall affect the tenure of office of any person holding any position or office coming within the provisions of said Title 11 as it applies to said officers and employees." (Emphasis supplied)

This sentence modifies the preceding sentence and carves Civil Service employees out of the general exception, affording, through its particular terminology, an exception exclusively for them. Therefore, we come to a consideration of the operative date of this special Civil Service provision. As indicated above, the second sentence of section 207 provides that the tenure of any person holding a position or office, where the municipality is operating under the Civil Service Act "at the time of the *adoption* of an optional plan" under the Faulkner Act, shall not be affected (emphasis supplied).

Plaintiffs argue for a literal construction of the phrase "at the time of the adoption" in order to limit protection from the abolition of their employment to those employees who have acquired tenure under *R. S.* 11:19–1, *et seq.* in municipalities operating under Civil Service at the time that the terms of the Faulkner Act are adopted by referendum.

To accept plaintiffs' literal reading of the second sentence of section 207 would give rise to an anomalous result. Under section 207, persons holding positions or offices where Civil Service becomes operative subsequent to the adoption of the Faulkner Act but prior to the effective date of the act would be denied employment protection, while those coming within the confines of other tenure laws during the same period would have both their offices and terms of offices salvaged.

We are unable to discover any logical reason why the Legislature would intentionally make one test applicable to those persons enjoying tenure by virtue of statutes other than Civil Service and another for those under Civil Service. Nor do we know why those employees in municipalities operating under Civil Service "at the time of the adoption of an optional plan" should benefit from their tenure status and those employees in municipalities adopting Civil Service subsequent thereto should not. There are no conceivable differences in the above employment situations to call for any such distinction.

Insofar as the recitation of the Faulkner Act objectives are concerned, the legislative history fails to indicate that a distinction in critical dates for the protection of Civil Service employees on one hand and employees protected by other tenure laws on the other was intended. In fact, the contrary is disclosed by an examination of prepassage information. It is found that all employees protected by tenure, including Civil Service employees, were fused into one class. This indicates an intention to afford the same protection to all of them. The committee which prepared the Faulkner Act advised, in its Preliminary Statement, *The Commission on Municipal Government* (1948), at *p.* 60 that:

"*Succession in Government*: \* \* \* Provision is made for the repeal of all special charters after the effective date of an optional plan in a municipality, for the continuance of all ordinances and resolutions not inconsistent with the optional charter act, for the termination of offices existing under prior charters, and *for protecting the tenure of certain officers such as policemen, firemen, teachers and any other person protected by Title 11 of the Revised Statutes* (*Civil Service*) *or by any other tenure of office law.*" (Emphasis supplied)

See also, *id.,* Final Report (1949), at *p.* 90; *id.,* Second Report (1950), at *pp.* 12–13.

In *N. J. S. A.* 11:21–6 of the Civil Service Act, we find an intent to protect, or cover in, as of the date of the adoption of Civil Service by the municipality, all "officers, clerks and employees in the employ of any \* \* \* municipality \* \* \* at the time of the adoption of [Civil Service]" who were employed at least since the date of the filing of the petition seeking a referendum on the question of the adoption of that act. That is, these employees continue to hold their offices and employments subject to removal only in accordance with the provisions of the Civil Service Act and the regulations thereunder. Thus it is seen that the policies of the Civil Service Act and the Faulkner Act were identical in respect to tenure and that the Faulkner Act sought as well to accord the same protection to all officers and employees protected by any tenure law. No

distinction was intended to be made between "policemen, firemen, teachers and any other person protected by * * * any other tenure of office law" and those persons whose tenure is protected by the Civil Service Act.

Moreover, we find nothing in the Faulkner Act to suggest that the Legislature intended to bind the hands of the voters of a municipality after they adopt a new plan of government, and thus prevent them from securing Civil Service protection for the municipality's career employees in non-policy-making positions.

The philosophy and public policy behind the Civil Service Act was well expressed in *Connors v. City of Bayonne,* 36 *N. J. Super.* 390 (*App. Div.* 1955), certif. denied 19 *N. J.* 362 (1955), where the court said at *p.* 396:

"Primarily it was to remove employment in the classified service from political control, partisanship and personal favoritism, and to maintain stability and continuity in ordinary public employment. Therefore it behooves the judicial branch of the government to give the widest possible range to the application of the law."

In *State v. Clark,* 15 *N. J.* 334 (1954), this court said at *p.* 341:

"Many decisions have recognized that the purpose of the Civil Service Law is to procure efficient public service and to secure tenure during good behavior for public officers and that the law should be given a broad construction to bring employees within its operation. *Sullivan v. McOsker,* 84 *N. J. L.* 380 (*E. & A.* 1913); *Scancarella v. Dept. of Civil Service,* 24 *N. J. Super.* 65 (*App. Div.* 1952).

As between the two possible constructions of the statute, the one should be adopted which effectuates rather than defeats the legislative purpose. *Moore v. Johnson,* 85 *N. J. L.* 40 (*Sup. Ct.* 1913)."

See also *Borough of Park Ridge v. Salimone,* 21 *N. J.* 28, 44 (1956).

■■ Plaintiffs' proffered construction requires not only a conclusion that the Faulkner Act made a distinction between tenure under the Civil Service Act and other tenure laws but rests upon an implied repealer of *N. J. S. A.* 11:21–6 by *N. J. S. A.* 40:69A–207. The tenure established

by *N. J. S. A.* 11:21–6 would thus be nullified since Civil Service employees who ordinarily would have tenure protection under that act would suffer the termination of their employment, and could acquire similar re-employment only after proper examination pursuant to *R. S.* 11:23–1, *et seq.* As the court stated in *Henninger v. Bd. of Chosen Freeholders of County of Bergen,* 3 *N. J.* 68, 71 (1949):

"Repeals by implication are not favored in the law. In the absence of an express repealer indication of an intention of the Legislature to repeal a prior act must be clear and compelling. There is a strong presumption against such an intention. [Cases omitted.] Wherever possible statutes dealing with the same general subject will be recognized and harmonized."

Additionally, words alone do not control; rather it is the internal sense of the law which controls. The intention comes from a general view of the whole expression rather than from the literal sense of the particular terms. *Palkoski v. Garcia,* 19 *N. J.* 175, 181 (1955). The nature of the subject matter, the contextual setting, and statutes *in pari materia* must all be viewed together in seeking the legislative intent. The import of a particular word or phrase is controlled accordingly. Isolated expressions cannot be invoked to defeat a reasonable construction. *Giles v. Gassert,* 23 *N. J.* 22, 33–34 (1956).

Employing the above guides, we conclude that the intent of section 207 was to afford equal employment protection to all employees under any tenure of office act. Accordingly, the critical date for the Civil Service exception must coincide with that of the general exception, *i. e.,* (as above held) the effective date of the Faulkner Act.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.