179 N.J. Super. 146 (1981)
430 A.2d 966
STATE OF NEW JERSEY, APPELLANT,
v.
LOCAL 195, IFPTE AND LOCAL 518, SEIU, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 21, 1980.
Decided June 2, 1981.
*148 Before Judges MICHELS, ARD and FURMAN.
Erminie L. Conley, Assistant Attorney General, argued the cause for appellant (John J. Degnan, Attorney General of New Jersey, attorney).
Sanford R. Oxfeld argued the cause for Local 195, IFPTE, and Local 518, SEIU (Rothbard, Harris & Oxfeld, attorneys).
James F. Schwerin, Deputy General Counsel, argued the cause for Public Employment Relations Commission (Sidney H. Lehmann, General Counsel, attorney).
The opinion of the court was delivered by MICHELS, P.J.A.D.
The State of New Jersey (State) appeals from a decision and order of the Public Employment Relations Commission (PERC), (1) holding that it may negotiate with Local 195, IFPTE, and Local 518, SEIU (hereinafter collectively referred to as the "union"), concerning minor disciplinary matters so long as such negotiations do not contravene pertinent Civil Service laws and regulations and that disciplinary disputes may be referred to binding arbitration if the parties so provide in their grievance procedure, and (2) ordering the State to negotiate such issues upon demand of the union. The effect of the decision and order is to compel the State to negotiate (1) the standards for minor disciplinary infractions by union members; (2) a grievance and binding arbitration procedure for resolution of disputes involving *149 the guilt or innocence of such members with respect to both major and minor disciplinary infractions, and (3) a grievance and binding arbitration procedure for resolution of disputes involving the reasonableness of the penalty imposed except in cases of discharge from service.
During the course of negotiations for a collective bargaining agreement between the State and the union a dispute arose as to the negotiability of a contract clause providing for binding arbitration of disciplinary disputes. Although the State had agreed to such a provision with respect to previous contracts, during the negotiations for the 1979 contract the State took the position that a disciplinary grievance procedure was not negotiable. When the parties were unable to reach an agreement the union filed a petition with PERC for a scope of negotiations determination, claiming that the State was disputing the negotiability of matters which had risen during the course of collective negotiations. Specifically, the issues in dispute pertinent to this appeal, both relating to disciplinary determinations, were:
Whether the inclusion of a disciplinary clause in a collective negotiations agreement providing for binding arbitration of disciplinary matters is illegal.
Whether the parties may properly negotiate a disciplinary clause for "minor disciplinary actions," i.e., those which are specifically exempted from the Civil Service Statute.
Article VIII, which generated the dispute, established a four-step grievance procedure for disciplinary matters. The fourth step, in part pertinent here, permitted the union and the aggrieved employer to elect binding arbitration for disputes concerning any suspensions of more than five days, suspensions or fines imposed more than three times, or for an aggregate of more than 15 days in a calendar year, demotions and discharges. With respect to the arbitrator's powers over such disputes, the arbitrator's decision as to guilt, innocence or penalty was final and binding. The arbitrator was empowered to fashion whatever penalty he deemed appropriate to the circumstances, with the one exception that upon a determination of guilt the arbitrator could not substitute a lesser penalty for the penalty of removal from service imposed by the employer. The article further *150 provided that if the employee were found innocent or the penalty was modified, the arbitrator could order reinstatement with back pay for all or part of the period of the imposed suspension, dismissal or reduction in grade.
Additionally, with respect to the review of minor disciplinary actions, that is, actions where the penalty imposed was a suspension of five days or less, the article provided for panel consideration of the grievance. The panel was to consist of two union representatives, two state representatives, and one neutral member mutually selected by the parties. A unanimous decision by the state and union panel members was to be binding. In the event of disagreement between the state and union representatives as to disposition of the grievance, the union could submit the matter to binding arbitration if the neutral member decided that the matter raised issues warranting such submission.
PERC held that a disciplinary decision is a term and condition of employment for which binding arbitration could be negotiated and ordered the State to negotiate upon demand of the union a contractual article providing for binding arbitration of major and minor disciplinary grievances. We disagree and reverse.
The New Jersey Employer  Employee Relations Act (N.J.S.A. 34:13A-1 et seq.) requires collective negotiation with respect to the terms and conditions of public employment. N.J.S.A. 34:13A-5.3. Since the Legislature has not defined the phrase "terms and conditions of employment," our courts have undertaken to do so. In Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, 64 N.J. 17 (1973), the Supreme Court stated that our Legislature
... [contemplated] that to the extent that it could fairly be accomplished without any significant interference with management's educational responsibilities, the local boards of education would have the statutory responsibility of negotiating in good faith with representatives of their employees with respect to those matters which intimately and directly affect the work and welfare of their employees. [at 25]
In Englewood Bd. of Ed. v. Englewood Teachers, 64 N.J. 1 (1973), the companion case to Dunellen, the definition of the scope of mandatory negotiation was refined. Therein the Court stated that

*151 ... major educational policies which indirectly affect the working conditions of the teachers remain exclusively with the Board and are not negotiable whereas items which are not predominantly educational policies and directly affect the financial and personal welfare of the teachers do not remain exclusively with the Board and are negotiable. The lines are obscure and, pending further definitive legislation, they must be drawn case by case. [at 7]
More recently, in State v. State Supervisory Employees Ass'n, 78 N.J. 54 (1978), the court explained that:
... negotiable terms and conditions of employment are those matters which intimately and directly affect the work and welfare of public employees and on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy. [at 67]
See, also, W'dst'n-Pilesgr. Sch. Bd. of Ed. v. W'dst'n-Pilesgr. Ed. Ass'n, 81 N.J. 582, 590-591 (1980).
It is clear that the right of public employees and the corresponding obligation of public employers to negotiate terms and conditions of public employment are not unlimited and do not extend to matters of significant managerial prerogative or policy. See, e.g., Bernards Tp. Bd. of Ed. v. Bernards Tp. Ed. Ass'n, 79 N.J. 311, 321 (1979); Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144, 156 (1978); West Windsor Tp. v. Public Employment Rel. Comm'n, 78 N.J. 98, 108-109 (1978); State v. State Supervisory Employees Ass'n, 78 N.J. 54, 86-87 (1978); Bethlehem Tp. Bd. of Ed. v. Bethlehem Tp. Ed. Ass'n, 177 N.J. Super. 479 (App.Div. 1981); Demarest Bd. of Ed. v. Demarest Ed. Ass'n, 177 N.J. Super. 211, 220 (App.Div. 1980); Local 195, IFPTE, AFL-CIO v. State, 176 N.J. Super. 85, 97 (App.Div. 1980); Ramapo-Ind., etc. v. Ramapo-Ind., etc., Bd. of Ed., 176 N.J. Super. 35, 47 (App.Div. 1980). For example, in the Ridgefield Park case the court rejected PERC's claim that the public employment negotiations process encompassed a category of permissive subjects of negotiations, stating that:
... the very foundation of representative democracy would be endangered if decisions on significant matters of governmental policy were left to the process of collective negotiation, where citizen participation is precluded. This Court would be most reluctant to sanction collective agreement on matters which are essentially managerial in nature, because the true managers are the people. Our democratic system demands that governmental bodies retain their accountability to the citizenry.

*152 Our concern is with the very function of government. Both state and federal doctrines of substantive due process prohibit delegations of governmental policy-making power to private groups where a serious potential for self-serving action is created thereby. Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U.S. 116, 121-122, 49 S.Ct. 50, [51-52] 73 L.Ed. 210 (1938); Humane Soc. of U.S. v. N.J. State Fish and Game Comm., 70 N.J. 565, 578-579 (1976); Group Health Insurance v. Howell, 40 N.J. 436, 446-447 (1963), after remand 43 N.J. 104 (1964). See also Ind. Elec. Ass'n of N.J. v. N.J. Bd. of Exam., 54 N.J. 466, 482-483 (1969). To be constitutionally sustainable, a delegation must be narrowly limited, reasonable, and surrounded with stringent safeguards to protect against the possibility of arbitrary or self-serving action detrimental to third parties or the public good generally. Amal. Transit Wkrs. Local 140 v. Mercer Cty. Impr. Authority, supra; Group Health Insurance v. Howell, supra, 40 N.J. at 445; N.J. Dept. of Trans. v. Brzoska, 139 N.J. Super. 510, 513 (App.Div. 1976). [78 N.J. at 163-164]
The limitation which has been imposed upon public employers' participation in the collective negotiations process under our statutory scheme is premised upon the realization of the difference between private and public employers' respective responsibilities. Public employers are answerable to the public; private employers generally are not. The decisions that public employers make which affect governmental policies should not be subject to the collective negotiation process, and, accordingly, cannot be subject to binding arbitration. West Windsor Tp. v. Public Employment Rel. Comm'n, supra, 78 N.J. at 115. It is only those terms and conditions of employment which "intimately and directly affect the work and welfare of public employees and on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy" that are mandatory subjects of collective negotiation. State v. State Supervisory Employees Ass'n, supra, 78 N.J. at 67.
In light of these fundamental principles we are thoroughly convinced that the matter of the discipline of public employees is plainly a subject of essential inherent managerial prerogative which has been delegated by our Legislature to the public employer, and cannot be negotiated away by agreement with the public employer. Ridgefield Park Ed. Ass'n v. Ridgefield Bd. of Ed., supra, 78 N.J. at 160-161. The power to discipline a *153 public employee for misconduct, incompetency, inefficiency or other good cause is one of the most significant powers reposed in public employers and is essential to the maintenance of an adequate, efficient and effective public work force. This power to discipline is also an integral and essential part of fundamental governmental policy. The public employers cannot effectively and efficiently perform their governmental functions and fulfill their obligations to the public if they do not have the power to discipline employees without the encumbrances of collective negotiations and binding arbitration. We cannot conceive that our Legislature, in enacting N.J.S.A. 34:13A-5.3 of the New Jersey Employer-Employee Relations Act, intended to burden the State's public employers in such a manner. In any event, we are firmly convinced that disciplinary determinations do not fall within the scope of mandatory negotiations as interpreted by the courts of this State, and, therefore, cannot be appropriate subjects for collective negotiations and binding arbitration. In this respect, we repeat what our Supreme Court has stated so clearly in Bernards Tp. Bd. of Ed. v. Bernards Tp. Ed. Ass'n, 79 N.J. 311 (1979):
... there are but two categories of subjects in public employment negotiation: (1) mandatorily negotiable terms and conditions of employment, and (2) non-negotiable matters of government policy. 78 N.J. at 162. As to subjects falling within the former category, Township of West Windsor and State Supervisory Employees established that the parties may agree upon any dispute-resolution mechanism to resolve disagreements, including submission of such disputes to binding arbitration. As to subjects in the latter class, we ruled that the parties could not encroach upon managerial prerogatives by contracting for binding arbitration. Ridgefield Park, supra, 78 N.J. at 160; see, e.g., Dunellen Bd. of Educ., supra, 64 N.J. at 29 [at 325]
Consequently, we hold that a New Jersey public employer, such as the State here, lacks the power and authority to negotiate binding arbitration procedures for disputes concerning disciplinary determinations.
Moreover, the Legislature has established, as part of the State's constitutionally mandated merit and fitness system, a tenure system for public employees in the classified service which has, as an essential element, the delegation to the Civil *154 Service Commission (Commission) the authority to review certain disciplinary determinations and to delineate the boundaries within which public employers may discipline tenured employees. N.J.S.A. 11:4-2 provides, in part, that no person in the Civil Service shall be reduced or dismissed "in any manner or by any means other than those prescribed by this subtitle." N.J.S.A. 11:15-1 et seq. delegates to the Commission broad authority to regulate the causes for removals, suspensions, fines, reductions or demotions and to hear certain appeals from disciplined employees. See also, N.J.S.A. 11:5-1(d). Pursuant to this authority the Commission has promulgated rules governing disciplinary determinations and appeals therefrom. N.J.A.C. 4:1-16.7. See generally, N.J.A.C. 4:1-16.1 et seq. These mandatory proceedings for the review of disciplinary matters may not be supplemented, modified or changed in any respect, including the submission of a grievance as to the reasonableness of any penalty imposed by the public employer. See Bernards Tp. Bd. of Ed. v. Bernards Tp. Ed. Ass'n, supra, 79 N.J. at 325-326. In our view, the Civil Service Act has preempted the disciplinary determinations of the state employees here involved, leaving no room for collective negotiations or binding arbitration. See State v. State Supervisory Employees Ass'n, supra, 78 N.J. at 81. PERC's holding to the contrary violates fundamental notions of what constitutes managerial prerogatives as opposed to terms and conditions of employment that do not significantly interfere with the exercise of inherent managerial prerogatives.
Finally, we point out that PERC, in reaching the conclusion that the State, as a public employer, must negotiate binding arbitration procedures for disciplinary determinations, relied on a footnote in the Supreme Court's opinion in West Windsor Tp. v. Public Employment Rel. Comm'n, supra, 78 N.J. at 116, n. 4. We are satisfied, however, that nothing in the West Windsor case suggests that binding arbitration procedures for disciplinary decisions are arbitrable or negotiable. Furthermore, we are satisfied in view of the clear holding in the Bernards Tp. case that nothing in the West Windsor case may fairly be *155 construed as subjecting any other aspect of disciplinary proceedings to either arbitration or negotiation. On the contrary, to permit binding arbitration of disciplinary decisions would impermissibly encroach upon managerial prerogatives.
Reversed.