615 A.2d 1286

STATE OF NEW JERSEY, PETITIONER–APPELLANT, v.
STATE TROOPERS FRATERNAL ASSOCIATION,
RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 23, 1992—Decided November 12, 1992.

Before Judges KING, BRODY and THOMAS.

*Melvin E. Mounts,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Deputy Attorney

General, and *Mary L. Cupo–Cruz,* Senior Deputy Attorney General, of counsel; *Melvin E. Mounts,* on the brief).

*Michael J. Rappa* argued the cause for respondent (*Loccke & Correia,* attorneys; *Michael J. Rappa,* on the brief).

*Robert E. Anderson,* General Counsel, argued the cause for Public Employment Relations Commission (*Robert E. Anderson,* on the brief).

The opinion of the court was delivered by

KING, P.J.A.D.

The issue on appeal is whether this public employer, the State of New Jersey, Division of State Police, may agree in a collective bargaining agreement to allow an arbitrator at a grievance procedure to review minor disciplinary determinations made by the Superintendent or his designated subordinate. We conclude that this subject matter, minor discipline, is legally arbitrable. We thus agree with the Public Employment Relations Commission (PERC) and affirm. We reject the Attorney General's position that review of minor discipline of the State Police must remain exclusively within the State Police command structure under our statutory scheme.

On December 17, 1990, appellant, the State of New Jersey, as employer, petitioned for a scope of negotiations determination pursuant to *N.J.S.A.* 34:13A–5.4(d) of the Employer–Employee Relations Act, *N.J.S.A.* 34:13A–1 to –21 (the Act). The State sought to prevent binding arbitration of grievances filed by the State Troopers Fraternal Association. The particular grievances asserted that the employer had circumvented the parties' negotiated grievance procedure by departing from the practice of punishing certain minor offenses by reprimands and brief suspensions and instead subjected four State Troopers to summary disciplinary hearings, outside the scope of the grievance procedure.

PERC, a tripartite body of seven members—composed of public employer, public employee, and public interest represen-

tatives, *N.J.S.A.* 34:13A–5.2—unanimously declined to restrain arbitration of these grievances. PERC's holding was very narrow. PERC simply held that the public employer could legally have agreed under the so-called 1982 "discipline amendment" to *N.J.S.A.* 34:13A–5.3; *L.*1982, *c.* 103, § 1, to arbitrate these minor disciplinary determinations. PERC did not hold that this "discipline amendment" repealed or diminished the employer's statutory power to make rules and regulations concerning discipline of the State Police. Nor did PERC even consider the issue of whether the grievances, in fact, were contractually arbitrable, or whether the grievances had substantive merit.

PERC made these undisputed factual findings. The grievants had asserted that the Superintendent of the State Police had violated the collective negotiations agreement when he held summary disciplinary hearings and suspended troopers for short periods rather than issuing written reprimands without hearings. The parties had entered into a collective negotiations agreement effective from July 1, 1987 to June 30, 1990. The grievance procedure in Article XII in that agreement covered grievances over written reprimands. The grievance procedure excluded matters relating to removals or disciplinary actions resulting from actual hearings held pursuant to State Police Rules and Regulations. Specifically, Article XII(D)(3) of the agreement stated: "These [grievance] procedures are not applicable to matters relating to removal or disciplinary action resulting from hearings pursuant to the Rules and Regulations."

Article I of the State Police rules and regulations provides for three categories of disciplinary proceedings:

1. a general disciplinary hearing which may result in a dismissal, a reduction in rank or grade, or an unpaid suspension,

2. a summary disciplinary hearing which may result in an unpaid suspension of a month or less,

3. a written reprimand and accompanying unpaid suspension of five days or less.

Under the third category, three written reprimands within two years could subject an employee to such disciplinary hearing as the Superintendent may order. This third category of disciplinary proceedings was the one allegedly contemplated by the grievance procedure set out in the agreement.

On February 9, 1989 Trooper Christman was ordered to appear at a summary disciplinary hearing. The charge alleged that he had violated regulations by not carrying his weapon while on duty. He did not contest the factual basis for the charge but claimed that in the past only written reprimands had been issued for such offenses. The charge was sustained and he was suspended without pay for four days.

On May 9, 1989 Trooper Ortiz was ordered to appear at a summary disciplinary hearing on charges that he had violated Division regulations: he had allegedly disobeyed a written order on search techniques on female suspects, spoke abusively to a female suspect, and carelessly searched a vehicle for drugs. The hearing officer found the first and third charges substantiated, not the second. Ortiz was suspended without pay for eight days.

On May 12, 1989 Trooper Karsevar was ordered to appear at a summary disciplinary hearing on the charge of a lost or stolen weapon. The charge was substantiated. He was suspended without pay for four days.

Christman, Ortiz and Karsevar all filed grievances asserting in part that their offenses should have been punished by written reprimands without disciplinary hearings. They claimed that these summary disciplinary hearings overrode or by-passed the grievance procedure and violated several contractual clauses. The troopers asked in their grievances that the suspensions issued at the summary disciplinary hearings be set aside and written reprimands issued instead. A State Police hearing officer denied the grievances as not proper subjects of negotiation and arbitration, finding that the Superintendent of the State Police had sole responsibility for troop discipline.

PERC then reviewed the matter and ruled against the State, which now appeals.

PERC has "broad authority and wide discretion in a highly specialized area of public life." *Matter of Hunterdon County Bd. of Chosen Freeholders*, 116 *N.J.* 322, 328, 561 *A.*2d 597 (1989). The scope of our review is narrow. The administrative determination will stand unless clearly arbitrary or capricious. *State v. Professional Ass'n*, 64 *N.J.* 231, 258, 315 *A.*2d 1 (1974). That standard applies in scope-of-negotiations cases, like this one. *Hunterdon, supra*, 116 *N.J.* at 328–29, 561 *A.*2d 597. PERC's preemption rulings are entitled to particular and substantial deference. *Ibid.; Department of Corrections v. Communications Workers*, 240 *N.J.Super.* 26, 33, 572 *A.*2d 213 (App.Div.1990). So are the interpretations of the statute it administers. *Board of Educ. v. Kramer*, 99 *N.J.* 523, 534, 494 *A.*2d 279 (1985), *cert. denied*, 475 *U.S.* 1072, 106 *S.Ct.* 1388, 89 *L.Ed.*2d 613 (1986); *In re Bridgewater Township*, 95 *N.J.* 235, 244, 471 *A.*2d 1 (1984).

PERC decisions applying the 1982 discipline amendment to *N.J.S.A.* 34:13A–5.3[1] have received substantial deference. *See Communications Workers v. PERC*, 193 *N.J.Super.*

---

[1] Prior to the amendment the pertinent paragraph read:

Public employers shall negotiate written policies setting forth grievance procedures by means of which their employees or representatives of employees may appeal the interpretation, application or violation of policies, agreements, and administrative decisions affecting them, provided that such grievance procedures shall be included in any agreement entered into between the public employer and the representative organization. Such grievance procedures may provide for binding arbitration as a means for resolving disputes. [*L.*1968, *c.* 303, § 7, at 896].

After the amendment the pertinent paragraph read:

Public employers shall negotiate written policies setting forth grievance and disciplinary review procedures by means of which their employees or representatives of employees may appeal the interpretation, application or violation of policies, agreements and administrative decisions, including disciplinary determinations, affecting them, provided that such grievance and disciplinary review procedures shall be included in any agreement entered into between the public employer and the representative organiza-

658, 663, 475 *A*.2d 656 (App.Div.1984) (five consolidated appeals involving scope determinations in disciplinary cases). We hasten to observe that we see no basis to conclude that *N.J.S.A.* 34:13A–5.3 in any sense impliedly repealed or reduced the Superintendent's power to make disciplinary rules and regulations governing the State Troopers under *N.J.S.A.* 53:1–10.[2] This power to make disciplinary rules and regulations can still be fully exercised, subject to the Superintendent's discretion under *N.J.S.A.* 34:13A–5.3 (as amended), if the Superintendent decides to agree with the Trooper's union and have a neutral arbitrator review determination of minor disciplinary violations.

Under the 1982 discipline amendment, an employer may agree to arbitrate disputes which cannot be contested through any other statutory appeal procedure. State troopers have no such statutory appeal procedure for contesting minor disciplinary determinations. For logical as well as practical reasons, we conclude that *N.J.S.A.* 53:1–10 does not prevent an agreement to arbitrate these relatively minor matters.

Since the Act's inception in 1968, *N.J.S.A.* 34:13A–5.3 has required negotiations over "terms and conditions of employ-

---

tion. Such grievance and disciplinary review procedures may provide for binding arbitration as a means for resolving disputes. The procedures agreed to by the parties may not replace or be inconsistent with any alternate statutory appeal procedure nor may they provide for binding arbitration of disputes involving the discipline of employees with statutory protection under tenure or civil service laws. Grievance and disciplinary review procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement. [*L.*1982, *c.* 103, § 7, at 545–546]. See also the "Historical Note" under *N.J.S.A.* 34:13A–5.3 for explanation of the several amendments to Subsection 5.3.

[2] *N.J.S.A.* 53:1–10 states:

Rules and regulations; instruction to troopers

The superintendent shall, with the approval of the governor, make all rules and regulations for the discipline and control of the state police, and provide the necessary preliminary and subsequent instruction to the troopers in their duties as police officers.

ment." Initially, PERC concluded that this phrase included disciplinary disputes and review procedures. Two appellate panels disagreed. *See State v. Local 195, IFPTE,* 179 *N.J.Super.* 146, 430 *A.*2d 966 (App.Div.1981), *certif. denied,* 89 *N.J.* 433, 446 *A.*2d 158 (1982); *City of Jersey City v. Jersey City Police Officers' Benevolent Ass'n,* 179 *N.J.Super.* 137, 430 *A.*2d 961 (App.Div.1981), *certif. denied,* 89 *N.J.* 433, 446 *A.*2d 158 (1982).

The legislative response was swift. Section 5.3 was amended in 1982 to require negotiations over "disciplinary disputes" and "disciplinary review procedures by which ... employees or representatives of employees may appeal ... disciplinary determinations." *L.*1982, *c.* 103, § 1, at 545–546. Procedures for reviewing questions such as guilt or innocence and the reasonableness of penalty could thus be negotiated. See the Sponsor's statement to the 1982 amendment.[3] These procedures

---

[3] The Sponsor's statement says:

In June of 1981 the Appellate Division of the State Superior Court, in *State of New Jersey v. Local 195 IFPTE and Local 518, SEIU,* 179 *N.J.Super.* 146, 430 *A.*2d 966, ruled that disciplinary determinations did not fall within the scope of mandatory negotiations and that collective agreements could not, therefore, provide for the submission to binding arbitration of contested disciplinary actions.

This bill would overturn that court ruling so as to give meaning to the State Constitution's guarantee of the right of public employees to "present ... their grievances and proposals through representatives of their own choosing" (Article I, paragraph 19). The proposed legislation merely provides that administration decisions affecting public employees—already clearly recognized by the court as negotiation—will be understood to encompass "disciplinary determinations" and that disciplinary review procedures as well as disciplinary disputes in general, will be a required subject of negotiations as a term and condition of employment. Disciplinary actions have an unquestionably intimate and direct effect on the work and welfare of public employees and should be viewed as only indirectly related to the right of public officials to determine substantive governmental or educational policy. The above amendments also empower public employers to negotiate binding arbitration procedures for disciplinary disputes. Under this bill, contractual provisions concerning disciplinary disputes could cover such basic issues as a review of the guilt or innocence

could, as well, include concepts of progressive discipline, including reprimands for first offenses. *See County College of Morris Staff Ass'n v. County College of Morris,* 100 *N.J.* 383, 395, 495 *A.*2d 865 (1985). In contrast, under *N.J.S.A.* 34:13A–24, school boards may impose minor discipline on employees but must negotiate over a schedule of penalties.

■ The 1982 discipline amendment specified that "disciplinary review procedures may provide for binding arbitration as a means of resolving disputes." *N.J.S.A.* 34:13A–5.3. Such arbitration is permitted so long as the employee does not have an alternative statutory appeal procedure for contesting the type of discipline imposed. *See Bergen County Law Enforcement Group v. Bergen County Bd. of Chosen Freeholders,* 191 *N.J.Super.* 319, 466 *A.*2d 963 (App.Div.1983); *Communications Workers v. PERC,* 193 *N.J.Super.* 658, 663, 475 *A.*2d 656 (App.Div.1984). These cases reject the contention that an employee whose statutory rights extend only to contesting discharges, cannot arbitrate other, less significant, disciplinary disputes. Such a result would treat tenured employees worse than non-tenured employees, an incongruity which we will not entertain and which the Legislature surely did not contemplate or intend. *Id.* at 662.

Under statute, school boards must agree to arbitrate minor disciplinary disputes. *N.J.S.A.* 34:13A–19. But other public employers, such as the State here, need not so agree. The 1982 amendment forced nothing upon them. *See Communications Workers v. PERC, supra,* 193 *N.J.Super.* at 664, 475 *A.*2d 656. And, of course, an arbitration award which is not contractually authorized or consistent with the public interest may be vacated. *Communications Workers v. Monmouth County Bd. of Social Services,* 96 *N.J.* 442, 450–57, 476 *A.*2d 777 (1984).

---

of an employee with respect to both major and minor disciplinary infractions, and the standards for, and reasonableness of, any penalty imposed.

State troopers have no alternative statutory appeal procedure for contesting the fairness of minor disciplinary determinations. Troopers can achieve tenure under *N.J.S.A.* 52:1–8.1 and can challenge removals under *N.J.S.A.* 52:14–17.2. *In re Carberry,* 114 *N.J.* 574, 582, 556 *A.*2d 314 (1989). No other statute defines or guarantees a procedure through which troopers can appeal or challenge other, lesser discipline. The opportunity to negotiate over minor disciplinary review procedures is the only statutory recourse the troopers have against unjust minor discipline.

We have been informed that PERC has consistently restrained arbitration of disciplinary disputes when employees have a right to appeal to the Merit System Board (the old Civil Service Commission) or the Commissioner of Education, or with respect to discharged or otherwise disciplined firefighters or police officers. *See N.J.S.A.* 18A:29–14, 34:14A–26, 40A:14–19, and –150. In these circumstances the precluded employees, unlike the State troopers, had specific statutory procedural outlets from unjust command discipline.

The State points us to this court's general prerogative writ jurisdiction under *R.* 2:2–3(a)(2), *see* Pressler, *Current N.J. Court Rules,* comment 3 on *R.* 2:2–3, at 339 (1992), to entertain appeals from decisions of administrative agencies as the solution. The State claims that this is an adequate avenue of review and that the grievance route is not needed. But this avenue is not an alternative statutory appeal procedure. In contrast, for example, *N.J.S.A.* 40A:14–19 and –150 require trial courts to conduct *de novo* hearings when police officers or firefighters contest fines, suspensions or discharges. Review under *R.* 2:3–3(a)(2) is more comparable to a Law Division judge's duty only to decide whether local administrative action is arbitrary or capricious; this forum does not afford *de novo* review. *Communications Workers v. PERC, supra,* 193 *N.J.Super.* at 662, 475 *A.*2d 656. Arbitration, if agreed upon by the parties, surely provides a more efficient, meaningful and prompt review than time-consuming recourse to the Appellate

Division after full briefing and upon a cold, administrative record.

We conclude that our ultimate prerogative writ jurisdiction does not oust the arbitration option here. If the State is correct in urging exclusive review by this court, the discipline amendment could be excised from the Act for many State employees and every form of minor discipline would require appeal to this court, a result we find not contemplated or desirable.

■ Finally, we conclude that *N.J.S.A.* 53:1–10 does not preempt negotiations over disciplinary review procedures. The Employer–Employee Relations Act covers the State as employer and these troopers as employees. *N.J.S.A.* 34:13A–3, and – 15. The discipline amendment and its arbitration provisions presumptively apply to all employers and employees covered by the Act. PERC did not hold in this case that the 1982 discipline amendment impliedly repealed *N.J.S.A.* 53:1–10. If PERC so intended, we disagree with that analysis and conclusion. We do not think that the disciplinary amendment and *N.J.S.A.* 53:1–10 necessarily negate each other or are inexorably in conflict, as the State urges. We conclude, as we believe that PERC did, that the two statutes can be read together and harmonized. *Loboda v. Township of Clark*, 40 *N.J.* 424, 435, 193 *A.*2d 97 (1963).

*N.J.S.A.* 53:1–10 grants the Superintendent the authority, with the Governor's approval, to "make all rules and regulations for the discipline and control of the state police, and provide the necessary ... instruction to the troopers in their duties as police officers." This general grant of authority coalesces with the 1982 discipline amendment's caveat that it shall not "be construed as permitting negotiation of the standards or criteria for employee performance." *N.J.S.A.* 34:13A–5.3 As the Sponsor's statement to the 1982 discipline amendment elaborates:

The proposed legislation does not challenge the exclusive power of the employer to initiate discipline or discharge a public employee for misconduct,

> incompetency or inefficiency so as to maintain an adequate and effective work force. It merely assures organized public employees that procedures to review such important considerations as the fairness of disciplinary actions can be available to them through negotiations, and may be examined by an independent third party, if the parties so agree in their contract.

The discipline amendment does not displace the employers' prerogatives concerning employee conduct. It simply permits a willing employer to agree to a procedure by which a neutral arbitrator may review the fairness of minor command discipline.

In deciding whether a statute preempts public-sector negotiations, the question is not whether the statute broadly authorizes an action taken by an employer; the question is whether the statute "expressly, specifically, and comprehensively" eliminates the employer's discretion and prevents the employer from negotiating with the employees representative over the matter. *Hunterdon County Bd. of Chosen Freeholders v. Communications Workers*, 116 *N.J.* 322, 330, 561 *A.*2d 597 (1989); *State v. State Supervisory Employees Ass'n*, 78 *N.J.* 54, 80–82, 393 *A.*2d 233 (1978). We conclude that *N.J.S.A.* 53:1–10 is comparable to other statutes which confer broad authority to discipline employees, fix compensation, terminate employees, or determine terms and conditions of employment, but which do not specifically prohibit a particular employment condition. For example, *N.J.S.A.* 18A:11–1, 40A:14–106, and –118, respectively, authorize employers to adopt rules and regulations governing the conduct and discharge of school board employees and the discipline of county and municipal police forces. But such statutes do not preempt negotiations or preclude arbitration on the subject. *See Hunterdon, supra*, 116 *N.J.* at 330, 561 *A.*2d 597; *Wright v. Board of Educ.*, 99 *N.J.* 112, 119, 491 *A.*2d 644 (1985); *Township of Old Bridge Bd. of Educ. v. Old Bridge Educ. Ass'n*, 98 *N.J.* 523, 489 *A.*2d 159 (1985); *Local 195, IFPTE v. State*, 88 *N.J.* 393, 406, 416, 443 *A.*2d 187 (1982); *Paterson Police PBA Local No. 1 v. City of Paterson*, 87 *N.J.* 78, 96–97, 432 *A.*2d 847 (1981). This State employer retains its right under both *N.J.S.A.* 53:1–10 and the 1982 discipline

amendment to adopt all rules and regulations governing employee conduct. But this substantive grant of authority does not "expressly, specifically and comprehensively" preempt a right to negotiate over minor disciplinary review procedures or prohibit an agreement, as allegedly reached here, to adopt a neutral review procedure.

*N.J.S.A.* 53:1–10; *L.*1921, *c.* 102, § 6, was enacted during a different era of public-sector labor relations. Doubtless, this 1921 statute did not foretell or foresee modern-era public sector labor relations as contemplated under the 1968 Act or the 1982 discipline amendment. The general and venerable authorization to the Superintendent granted by *N.J.S.A.* 53:1–10 to adopt disciplinary rules and regulations did not for all time displace the very specific permission of the 1982 discipline amendment to negotiate over review procedures for the minor disciplinary infractions which concern us here.

We conclude that PERC's interpretation and application of the discipline amendment in this situation preserves the employee's right to negotiate over minor disciplinary proceedings without diluting the employer's authority under *N.J.S.A.* 53:1–10 to adopt rules governing employee conduct. This harmonious reading of the statutes is preferable to a reading which will result in these trooper-employees as the only public employees covered by the Act without either a statutory appeal procedure for contesting minor disciplinary decisions or the opportunity under the 1982 discipline amendment to negotiate for a neutral review procedure in arbitration.

In closing, we remark that the reality in this situation is that the State chose to enter into the negotiations for the 1987 contract, if not some years before, for arbitration of grievances with respect to so-called "non-hearing" or minor offenses. The Deputy Attorney General tells us at oral argument that this was a "mistake"; no doubt he meant a misapprehension as to the Superintendent's authority to negotiate this term or condition of employment, *i.e.*, to "put it on the table." This item

again was acquiesced to in the 1990 contract, according to the Deputy Attorney General, "because the matter was then before the Courts." Thus, in the end, our decision seems simply to confirm the original suspicion of the Division and the Superintendent that this issue was fairly negotiable and need not be resisted to the death in order to avoid disciplinary calamity in the State Police.

As did PERC, "we specifically refrain from considering whether these grievances are contractually arbitrable or meritorious." We affirm PERC's denial of the State's request for a restraint of binding arbitration and find that the subject matter is within the scope of negotiations.

Affirmed.