PLUMBERS AND STEAMFITTERS LOCAL NO. 270, CARPENTERS LOCAL NO. 65 AND PAINTERS LOCAL NO. 144, PETITIONER-RESPONDENT, v. WOODBRIDGE BOARD OF EDUCATION, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 27, 1978—Decided April 26, 1978.

84

Before Judges MICHELS, PRESSLER and BILDER.

*Mr. Joseph J. Jankowski* argued the cause for appellant Woodbridge Board of Education (*Messrs. Hutt, Berkow* and *Hollander,* attorneys; *Mr. Stewart M. Hutt,* of counsel and on the brief).

*Mr. Sidney H. Lehmann* argued the cause for Public Employment Relations Commission.

*Mr. Alfred J. Petit-Clair, Jr.* submitted a brief for respondent Plumbers and Steamfitters Local No. 270, Carpenters Local No. 65 and Painters Local No. 144.

The opinion of the court was delivered by

BILDER, J. S. C. (temporarily assigned). This is an appeal by the Woodbridge Board of Education (board) from a determination by the Public Employment Relations Commission (PERC) in a scope-of-negotiations proceeding, holding tenure of maintenance men to be a mandatory subject of negotiations.

Beginning with the 1970-71 school year the collective bargaining agreement between the board and respondent Plumbers and Steamfitters Local No. 270, Carpenters Local No. 65 and Painters Local No. 144 (hereinafter union) (governing plumbers, painters and carpenters, hereafter "tradesmen") has included a provision granting tenure after three years. During the negotiations for the 1976-77 school year contract the board refused to include a tenure clause in the terms or to negotiate such a clause. The board contended that tenure could only be granted in accordance with the education laws and since those laws made no provision for this class of employee, such a provision would be ultra vires and illegal.

The parties compromised their differences by agreements which essentially left the question open. They provided in the contract for tenure "according to law to those employees entitled to it statutorily after three years of continuous satisfactory employment" and executed a separate ["sidebar"] agreement expressly reserving rights with regard to claims of entitlement to tenure.

This appeal arises from a petition for scope-of-negotiations determination filed by the union with PERC. Following consideration on briefs (with uncontradicted facts), PERC found tenure to be a mandatory subject of negotiations and ordered the board to negotiate in good faith regarding tenure for this group of employees.

Defendant board contends that PERC exceeded the boundaries of the submission by considering the right to negotiate a tenure not provided for in the Education Act; that the issue submitted to PERC was the negotiability of "tenure"

as it is known in Title 18A. It is not disputed that PERC interpreted "tenure" as set forth in the petition as referring to "job security".[1] The board further contends on this appeal that even if PERC's decision was within the submission, its conclusion was error because the board is without power to grant tenure; that tenure can only be given by the legislature.

Upon review the court is bound to uphold the action of the Commission unless it is arbitrary or capricious. *State v. Prof. Assoc. of N. J., D'ept. of Ed.,* 64 *N. J.* 231, 258-259 (1974). Due deference should be accorded to the agency expertise. *Ibid.*

This controversy finds its basis in a semantic argument as to the meaning of "tenure." The definitional dispute underlies not only the substantive issue of negotiability but also the procedural question as to whether PERC dealt with the issue presented by the petition. The board takes the position that "tenure" means tenure under the provisions of our Education Act (*N. J. S. A.* 18A–1 *et seq.*); that the issue presented is whether the parties can negotiate to extend the tenure provisions of *Title* 18 to include maintenance men. Respondent union contends that "tenure" means tenure without legislative mandate and as generally understood—*i.e.,* a right to continued employment during good behavior; that the issue presented is whether the legislative grants of tenure in *Title* 18A to particular categories of employees makes it illegal for board of education employees not covered by those provisions to negotiate continued employment protection for themselves.

We agree with respondent as to the scope of the submission. The question as set forth by the board presents a non issue. All the parties agree that the members of respondent union are not covered by any of the tenure

---

[1] In the "Statement of Disputes" section of the petition for scope of negotiations determination, the petitioner set forth, among other things, that "union seeks a 1) determination that tenure is a permissible subject for collective bargaining; * * *."

provisions of the Education Act.[2] And it is undisputed that expansion or modification of the statutory provisions is beyond their power or that of PERC. See *N. J. Const.* (1947), Art. IV, § I, par. 1 and Art. III, § 1. The issue in dispute between the parties and the issue before PERC was the right of these employees, barren of statutory tenure protection, to negotiate job security for themselves.

█ And we agree with respondents that board of education employees who are not within the categories covered by statutory tenure provisions may negotiate job security.

█ The application of the constructional principles of *expressio unius est exclusio alterius* to the tenure sections of the Education Act would be a *non sequitur.* To attribute legislative intent to the absence of statutory job security for this category of employee would be to blind oneself to the realities of the legislative process—to the history of the growth of the existing tenure provisions. The existing protections are the result of successful appeals by the covered groups for the passage of protective laws. Their *ad hoc* nature is implicit in the diversity of sections in which they are found.[3] Each legislative grant has been *sui generis.* The failure to provide a specific tenure should not be interpreted as a legislative prohibition. See *Maywood Education Assn., Inc. v. Maywood Bd. of Ed.,* 131 *N. J. Super.* 551, 554–555 (Ch. Div. 1974); *Camden v. Dicks,* 135 *N. J. Super.* 559, 562–563 (Law Div. 1975).

The right of public employees to negotiate the terms and conditions of their employment is now an accepted public

---

[2]The Education Act makes specific provision for tenure of teachers and other employees holding certificates issued by the State Board of Examiners (*N. J. S. A.* 18A:28–5 and 6) ; secretaries, assistant secretaries, business administrators, business managers, secretarial and clerical employees (*N. J. S. A.* 18A:17–2) ; janitorial employees (*N. J. S. A.* 18A:17–3) ; and attendance officers (*N. J. S. A.* 18A: 38–33).

[3]See note 2, *supra.*

policy. *N. J. S. A.* 34:13A–5.3. The right of employees to bargain for extra-statutory rights has received judicial recognition. *South Orange-Maplewood Ed. Ass'n v. South Orange Bd. of Ed.,* 146 *N. J. Super.* 457 (App. Div. 1977) (sabbatical leaves); *Maywood Ed. Ass'n, Inc. v. Maywood Bd. of Ed., supra* (lump sum retirement payment for unused sick leave); *Camden v. Dicks, supra* (same); see *Donaldson v. North Wildwood Bd. of Ed.,* 65 *N. J.* 236, 248 (1974) (obligation to furnish reasons for termination of nontenured teacher).

We agree with PERC's conclusion that job security and protection from unfair or unwarranted dismissal must rank high among an employee's rights. And we agree with its conclusion that board of education employees whose tenure is not provided for by the Legislature may negotiate job security.

Affirmed.