191 N.J. Super. 319 (1983)
466 A.2d 963
BERGEN COUNTY LAW ENFORCEMENT GROUP, SUPERIOR OFFICERS, P.B.A. LOCAL NO. 134, PLAINTIFF-APPELLANT,
v.
BERGEN COUNTY BOARD OF CHOSEN FREEHOLDERS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 1982.
Decided January 7, 1983.
*321 Before Judges MATTHEWS, ANTELL and FRANCIS.
Dennis M. Maher argued the cause for appellant.
Michael B. Ryan argued the cause for respondent.
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
This is an appeal from the denial of a demand for summary confirmation of an arbitration award. The County, as a public employer, disciplined one of its Sheriff's Officers for conduct unbecoming an employee. The dispute was submitted to binding arbitration in accordance with the employment agreement signed by both parties.
James O'Hara is a Bergen County Sheriff's Officer represented for bargaining purposes by plaintiff Bergen County Law Enforcement Group (L.E.G.). O'Hara is a public employee employed by defendant Bergen County Board of Chosen Freeholders (Freeholders).
On January 7, 1981 O'Hara accompanied a county electrician throughout the Bergen County Courthouse/Jail complex. The electrician was replacing lightbulbs and O'Hara had been given keys to gain access to various areas. Among the areas visited was the fifth floor, which had formerly been used in part for the jail. While working in the area, O'Hara took a large green hat later identified as belonging to the jury manager. O'Hara intended to entertain his friends at lunch with the hat as a prop. Later that afternoon the owner reported his hat missing. O'Hara was called and he returned the hat.
On January 27, 1981 O'Hara received a "Notice of Minor Disciplinary Action", which charged him with "[c]onduct unbecoming an employee in the public service," specifically:
1. Improper manning of post, thereby jeopardizing security of the main jail.

*322 2. Taking of personal property without the owner's permission.
The same notice informed O'Hara he had been fined $394.23, the equivalent of five days' pay.
The Employment Agreement negotiated and signed between the Freeholders and L.E.G. provided that all grievances should be presented first to the immediate supervisor, then to the department head and finally to the County Administrator. If a satisfactory resolution was not found, the employee had the right to submit the grievance to binding arbitration. The negotiated grievance procedure also provided that if an employee has been suspended for more than five days he may elect to appeal through Civil Service channels and forego the grievance procedure.
L.E.G. and O'Hara submitted his disciplinary dispute to binding arbitration pursuant to the agreement.
O'Hara did not contest the allegation that he had taken the hat without permission. The owner accepted O'Hara's statement that he had only done it as a lark and had intended to return it. The contested issue at the hearing was whether O'Hara had left "the gate" unlocked.
In his award issued July 29, the arbitrator determined that the Freeholders had the burden of proving their allegations by a preponderance of the evidence. He found they did not meet that burden as to the more serious charge of the unlocked gate. The arbitrator also found that the hat offense was minimal and reduced the fine to one day's pay.
On September 11, 1981 the Freeholders' attorney notified L.E.G. that the Freeholders did not intend to implement the arbitration award. Thus they reinstated the full five days' fine. It was the Freeholders' position that the decision in State v. Local 195, IFPTE, 179 N.J. Super. 146 (App.Div. 1981), certif. den. 89 N.J. 433 (1982), denied them the power to negotiate the grievance procedure including the provision for binding arbitration. They also asserted the "doctrine of estoppel" was not applicable against them.
*323 L.E.G. filed a verified complaint for confirmation of the arbitration award on November 6, 1981 in the Law Division. The Freeholders raised separate defenses: 1) that they had lacked the power to submit a disciplinary determination to binding arbitration, (2) the arbitrator exceeded his powers, (3) and the award was contrary to law and unconfirmable.
At the hearing in the Law Division on January 29, 1982 the judge declined to confirm the award. He stated, however, that O'Hara must be given the opportunity to have his discipline reviewed somewhere and so extended the "time to file an appeal by his lawsuit or whatever he had to do in the Law Division where I think this is reviewable."
After this dispute had arisen but before the actual arbitration hearing was held, two cases were decided in this court which were interpreted as placing grievance procedures for disciplinary disputes in the category of subjects that are nonnegotiable. State v. Local 195, IFPTE, supra, and Jersey City v. Jersey City Police Officers Benevolent Ass'n., 179 N.J. Super. 137 (App.Div. 1981), certif. den. 89 N.J. 433 (1982). Apparently, the Freeholders did not become aware of these decisions until after the arbitrator's award. It was after the Freeholders gained knowledge that L.E.G. and O'Hara were notified that the Freeholders did not intend to abide by the final award.
L.E.G. does not challenge the Freeholders' basic premise that disciplinary procedures are nonnegotiable subjects under the holdings of the two new decisions. Instead they argue that the Freeholders should be estopped from claiming that the agreement to arbitrate is ultra vires because (1) "every intendment is indulged in favor of an arbitration award, Held v. Comfort Bus Line, Inc., 136 N.J.L. 640 (Sup.Ct. 1948)" and (2) "arbitration is intended to be an end to litigation and not the beginning of it. Collingswood Hosiery Mills v. American Federation of Hosiery Workers, 31 N.J. Super. 466 (App.Div. 1954)." Furthermore, relying on In re Allstate Ins. Co., 179 N.J. Super. 581 (App.Div. 1981), they claim that estoppel may be evoked against a public body *324 whenever necessary "to prevent `manifest wrong and injustice' ... where it would not `hinder or prejudice essential government functions.'"
N.J.S.A. 34:13A-5.3 determines when a certain subject matter is negotiable. That statute has been recently amended. L. 1982, c. 103. As amended, the statute now provides that "representative[s] of public employees ... and ... the public employer shall meet ... and negotiate in good faith with respect to grievances, disciplinary disputes and other terms and conditions of employment." Specifically, "[p]ublic employers shall negotiate written policies setting forth grievance and disciplinary review procedures ... [which] may provide for binding arbitration as a means for resolving disputes." The underlined portions were added effective July 30, 1982.
The only limitations to these mandated negotiations are, first, the standards and criteria for employee performance are not negotiable and, second:
The procedures agreed to by the parties may not replace or be inconsistent with any alternate statutory appeal procedure nor may they provide for binding arbitration of disputes involving the discipline of employees with statutory protection under tenure or civil service laws.
Governor Kean conditionally vetoed an earlier version of the amendments which did not contain these limitations. In his conditional veto, the Governor expressed concern that a 1981 court decision, which he did not name, effectively eliminated negotiation of meaningful disciplinary dispute mechanisms for many public employees. The Governor suggested that only those employees without other statutory protections and appeal procedures be allowed to negotiate for such mechanisms. Where statutory mechanisms existed, the need for uniformity should prevail over any need to permit negotiation. Employees should not be able to choose contractual over statutory procedures. All of the Governor's suggestions were included in the bill as reenacted.
In Plumbers & Steamfitters v. Woodbridge Bd. of Ed., 159 N.J. Super. 83 (App.Div. 1978), this court affirmed a PERC determination *325 that a board of education must negotiate tenure[1] provisions with its maintenance men who had no statutory job security protections. We stated that the fact that this group of employees had not received any job security protection from the Legislature should not be read to mean that the Legislature intended they should have none. Id. at 87. We held that such public employees, having the right to negotiate the terms and conditions of employment, have the right to bargain for "extra-statutory rights." Id. at 88.
In State v. Local 195, IFPTE, 179 N.J. Super. at 154, we held that the Civil Service Act mandated procedures for dealing with disciplinary disputes such as those addressed in the appeal. Thus, when even a recognized term and condition of employment has been addressed in a statute, the statutory provisions preempt any right to collective negotiations on the same subject matter.
Necessarily, then, the arbitrators' authority in this case to render an award would depend on whether statutory mechanisms exist to review O'Hara's discipline. The Freeholders suggest that O'Hara wilfully ignored all available lines of review by stating that he "chose not to a [sic] challenge the Civil Service Commission ... [and] has not chosen to commence an action at law to review the discipline." They do not, however, explain what review is actually available.
The Freeholders concede that O'Hara is a tenured public employee within the classified Civil Service. Through N.J.S.A. 11:15-1, et seq. the Legislature has delegated to the Civil Service Commission the authority to review certain disciplinary determinations of those employees. Pursuant to that authority the Commission adopted regulations governing such review. N.J.A.C. 4:1-16.7(a)(1) provides that if an employee is fined the *326 equivalent of more than five days' pay he shall have the right to appeal to the Commission. Review of a lesser fine is only provided if the employee is in "State Service," N.J.A.C. 4:1-16.7(b).[2] Under the definition of N.J.A.C. 4:1-2.1 O'Hara is clearly in "[l]ocal government service":
"Local government service" means the offices and positions in the civil service of any county, municipality, school district, authority or other public corporation operating under the provisions of the Civil Service Law.
Clearly then, his disciplinary proceeding is not reviewable under the rules of the Civil Service Commission.
N.J.S.A. 40A:14-150 specifically provides for review of disciplinary convictions of officers of a police department (defined to include O'Hara's position) in a municipality where the Civil Service statutes are not in effect. Review in that case is directly to Superior Court. However, as acknowledged by the Freeholders, their county is governed by the Civil Service statutes. Therefore, O'Hara has no available review in Superior Court under N.J.S.A. 40A:14-150.
Neither plaintiffs nor defendant suggest another line of review for O'Hara. The Law Division judge was concerned that O'Hara not be left without review in any forum. He assumed that the discipline was reviewable in court.
Based on the foregoing, we are satisfied that the Law Division judge's concern as to the lack of review of O'Hara's disciplinary "proceeding" was well placed. As pointed *327 out above, O'Hara has no right to resort to Civil Service procedures, and there are no other statutory procedures to which he might turn for review. Under the circumstances presented, therefore, we are constrained to regard O'Hara's position under a five day suspension to be analogous to the position of the custodial workers involved in Plumber & Steamfitters v. Woodbridge Bd. of Ed., and also within the purview of L. 1982, c. 103. Accordingly, the judgment of the Law Division is reversed and the cause remanded for the purpose of entering a judgment confirming the arbitrator's award.
NOTES
[1] Tenure as used in the PERC proceedings referred to job security and protection from unfair or unwarranted dismissal. See Plumbers & Steamfitters, supra, 159 N.J. Super. at 88.
[2] (a) An appointing authority may suspend without pay or with reduced pay, fine or demote an employee due to inefficiency, incompetency, misconduct, negligence, insubordination or for other sufficient cause; however:

1. An employee who shall be suspended, fined or demoted more than three times in any one year (one year being from date of first suspension, fine or demotion to one year therefrom) or more than five days at one time, or for a period of more than 15 days in the aggregate in any one calendar year shall be served with written charges and have the right to appeal to the Civil Service Commission. The commission shall have the power to revoke or modify the action of the appointing authority, except that removal from service shall not be substituted for a lesser penalty.