692 A.2d 990

COUNTY OF MONMOUTH, PETITIONER–APPELLANT, v. COMMUNICATIONS WORKERS OF AMERICA, RESPONDENT–RESPONDENT.

COUNTY OF UNION, PETITIONER–RESPONDENT, v. PATROL-MEN'S BENEVOLENT ASSOCIATION, UNION COUNTY CORRECTION OFFICERS, LOCAL NO. 199, INC., RESPONDENT–APPELLANT.

TOWNSHIP OF SOUTH BRUNSWICK, PETITIONER–RESPONDENT, v. SOUTH BRUNSWICK PBA LOCAL 166, RESPONDENT–APPELLANT.

TOWNSHIP OF WOODBRIDGE, PETITIONER–APPELLANT, v. INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN, AND HELPERS OF AMERICA, LOCAL 469, RESPONDENT–RESPONDENT.

TOWNSHIP OF WOODBRIDGE, PETITIONER–APPELLANT, v. LOCAL 3044, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, RESPONDENT–RESPONDENT.

CITY OF ORANGE TOWNSHIP, PETITIONER–APPELLANT, v. ORANGE FMBA LOCAL NO. 10, RESPONDENT–RESPONDENT.

COUNTY OF HUDSON, PETITIONER–APPELLANT, v. DISTRICT 1199J, NUHHCE, AFSCME, AFL–CIO, RESPONDENT–RESPONDENT.

COUNTY OF HUDSON, PETITIONER–RESPONDENT, v. NEW JERSEY STATE PATROLMEN'S BENEVOLENT ASSOCIATION, LOCAL NO. 51, RESPONDENT–APPELLANT.

BOROUGH OF HOPATCONG, PETITIONER–APPELLANT, v. PBA LOCAL 149, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 25, 1997—Decided April 22, 1997.

274

Before Judges DREIER, D'ANNUNZIO and VILLANUEVA.

*Robert J. Hrebek* argued the cause for appellant County of Monmouth.

*Stephen P. Weissman* argued the cause for respondent Communications Workers of America (*Weissman & Mintz*, attorneys).

*Stephen B. Hunter* argued the cause for appellants Patrolmen's Benevolent Association, Local 199 and So. Brunswick PBA Local 166 (*Klausner, Hunter & Seid,* attorneys; *Mr. Hunter,* of counsel, *Lawrence Van Wess,* on the brief).

*Brian N. Flynn* argued the cause for respondent County of Union (*DeMaria Ellis,* attorney; *James L. Plosia, Jr.,* on the brief).

*Stephen B. Hunter* argued the cause for appellant So. Brunswick PBA Local 166 (*Klausner, Hunter & Seid,* attorneys; *Mr. Hunter,* of counsel, *Lawrence Van Wess,* on the brief).

*Mark S. Ruderman* argued the cause for respondent Township of So. Brunswick (*Ruderman & Glickman,* attorneys; *Mr. Ruderman,* of counsel, *Laura Simonyan,* on the brief).

*Paul L. Kleinbaum* argued the cause for amicus curiae New Jersey State Policemen's Benevolent Association (*Zazzali, Zazzali, Fagella & Nowak,* attorneys; *Mr. Kleinbaum,* on the brief).

*James J. McGovern, III* argued the cause for the appellant Township of Woodbridge A–3476–94T1, A–3477–94T1 and A–3478–94T1 (*Genova, Burns, Trimboli & Vernoia,* attorneys; *Mr. McGovern,* of counsel and on the brief, *Stephen E. Trimboli,* and *James J. Gillespie,* on the brief).

*Sheldon Margolis* argued the cause for respondent International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Local 469 A–3476–94T1 (*Hott & Margolis,* attorneys).

*Elyse C. Genek* argued the cause for respondent Local 3044, American Federation of State Employees and Municipal Employees, AFL–CIO A–3477–94T1 and A–3478–94T1 (*Pellettieri, Rabstein & Altman,* attorneys; *Ira C. Miller,* of counsel and on the brief, *Ms. Genek,* on the brief).

*Genova, Burns, Trimboli & Vernoia,* attorneys for appellant City of Orange Township (*James J. McGovern, III,* of counsel and

on the brief, *Stephen E. Trimboli* and *James J. Gillespie,* on the brief).

*Fox & Fox,* attorneys for respondent Orange FMBA Local No. 10 (*Dennis J. Alessi,* on the brief).

*Stephen E. Trimboli* argued the cause for appellant County of Hudson (*Genova, Burns, Trimboli & Vernoia,* attorneys; *Mr. Trimboli,* of counsel and on the brief, *James J. Gillespie,* and *James J. McGovern, III,* on the brief).

*Arnold S. Cohen,* argued the cause for respondent District 1199J, NUHHCE, AFSCME, AFL–CIO (*Balk, Oxfeld, Mandell & Cohen,* attorneys).

*Kevin P. McGovern* argued the cause for appellant New Jersey State Patrolmen's Benevolent Association, Local No. 51 (*Schneider, Goldberger, Cohen, Finn, Solomon, Leder & Montalbano,* attorneys; *Jacqueline Jassner,* on the brief).

*Stephen E. Trimboli* argued the cause for respondent County of Hudson (*Genova, Burns, Trimboli & Vernoia,* attorneys; *Mr. Trimboli,* of counsel and on the brief, *James J. Gillespie,* on the brief).

*Markowitz & Richman,* attorneys for amicus curiae New Jersey Lodge Fraternal Order of Police (*Deanna L. Forbush,* on the brief).

*David A. Wallace,* attorney for appellant Borough of Hopatcong (*Mr. Wallace,* on the brief).

*Don Horowitz,* Deputy General Counsel, argued the cause for respondent Public Employment Relations Commission A–371–95T5 (*Robert E. Anderson,* General Counsel, *Mr. Anderson,* on the brief).

*Stephan M. Schwartz* argued the cause amicus curiae for the State of New Jersey in all appeals except A–371–95T1 (*Deborah T. Poritz,* Attorney General, attorney (*Mary C. Jacobson,* Assistant Attorney General, of counsel; *Mr. Schwartz,* on the brief).

The opinion of the court was delivered by

DREIER, P.J.A.D.

In six of these eleven consolidated cases, public employers appeal from separate decisions of the Public Employment Relations Commission ("PERC") declining to restrain the binding arbitration of minor disciplinary actions against Civil Service employees who were not police officers. In two cases, public employee organizations appeal from separate PERC decisions restraining the binding arbitration of minor disciplinary actions against police officers, Civil Service employees, and in one case from the dismissal of a provisional corrections officer employee. In the remaining two cases, the public employers appeal from PERC decisions restraining arbitration in a police officer job-reassignment dispute, and declining to restrain the binding arbitration of certain pre-discipline procedural matters in a minor disciplinary action against a police officer Civil Service employee. We have consolidated the cases because they involve related issues of the disposition of minor discipline cases of Civil Service employees.

Principally at issue is whether a public employer may submit a minor disciplinary dispute involving Civil Service employees to binding arbitration. Cases decided prior to a recent amendment to *N.J.S.A.* 34:13A–5.3 indicate that it may not. *See L.* 1996, *c.* 115, § 4, (effective January 9, 1997, 120 days following its approval on September 11, 1996). Also at issue is whether a public employer may submit to binding arbitration certain procedural matters, the timeliness of a disciplinary charge and the necessity for a hearing on that charge before guilt is determined, attendant to a minor disciplinary action involving a police officer who is a Civil Service employee. Additionally, there is a question as to whether these same rules apply to the dismissal of a provisional employee or to an employee's reassignment, allegedly for disciplinary reasons. Finally, there is an issue concerning how to treat five-day suspensions, since the new statute covers punishment for "less than five days," while the Civil Service law defines a minor grievance as one of "five days or less." *N.J.S.A.* 11A:2–14 and 16.

## I. The Cases Presented

In each case, a governmental entity petitioned PERC to restrain the binding arbitration of a grievance in a minor disciplinary action involving a Civil Service employee. In each case, the governmental entity and an employee-representative organization had previously entered into a collective negotiations agreement that included a provision for the binding arbitration of grievances. In each case, the dispute centered chiefly upon whether the governmental entity was legally required to agree to such binding arbitration of disciplinary grievances involving Civil Service employees. A brief description of each of the eleven cases follows in chronological order.

In *County of Monmouth v. Communications Workers of America*, A–3286–94T1, the County imposed a three-day suspension on an income maintenance worker for her alleged failure to meet deadlines, her low productivity, and her excessive use of supervisory time. The union filed a grievance, and the County petitioned PERC for a scope of negotiations determination, seeking to restrain binding determination of the grievance. On January 25, 1995, PERC refused to restrain arbitration of the grievance.

In *Township of Woodbridge v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Local 469*, A–3476–94T1, the Township suspended a senior maintenance worker for five days for his alleged insubordination, disorderly conduct, neglect of duty, and willful violation of work rules. The union filed a grievance, and the Township petitioned PERC for a scope of negotiations determination to restrain binding arbitration. On January 25, 1995, PERC denied the Township's request to restrain arbitration.

In *Township of Woodbridge v. Local 3044, American Federation of State, County, and Municipal Employees*, A–3477–94T1, the Township suspended a principal clerk typist for two days for alleged outbursts toward a fellow employee. The typist filed a grievance, and the Township petitioned PERC for a scope of

negotiations determination to restrain binding arbitration. On January 25, 1995, PERC refused to restrain the arbitration.

In *Township of Woodbridge v. Local 3044, American Federation of State, County and Municipal Employees*, A–3478–94T1, the Township suspended a senior clerk typist for three days for allegedly turning in incomplete and incorrect petty cash vouchers. The union filed a grievance, and the Township petitioned PERC for a scope of negotiations determination to restrain binding arbitration. On January 25, 1995, PERC denied the Township's request.

In *Township of Woodbridge v. Local 3044, American Federation of State, County and Municipal Employees*, A–3479–94T1, the Township again disciplined the same clerk typist, this time imposing a five-day suspension for allegedly talking back to the mayor. She filed a grievance, and the Township petitioned PERC for a scope of negotiations determination to restrain binding arbitration. On January 25, 1995, PERC refused to restrain arbitration.

In *City of Orange Township v. Orange FMBA Local No. 10*, A–3480–94T1, the City suspended a firefighter for four days for allegedly feigning illness and for leaving his house while on sick leave without first calling the department. The firefighters' union filed a grievance, and the City petitioned PERC for a scope of negotiations determination to restrain binding arbitration. On January 25, 1995, PERC denied the City's request to restrain arbitration. This matter has been settled by the parties, and the appeal has been withdrawn.

In *County of Hudson v. District 1199J, NUHHCE, AFSCME*, A–3483–94T1, the County suspended a clerk typist for three days for allegedly failing both to advise her supervisor of her absence and to produce a doctor's note. The union filed a grievance, and the County petitioned PERC for a scope of negotiations determination to restrain binding arbitration. On January 25, 1995, PERC refused to restrain arbitration.

In *County of Union v. Patrolmen's Benevolent Association, Union County Corrections Officers, Local No. 199, Inc.*, A–3416–94T1, the County terminated a provisionally appointed corrections officer for conduct unbecoming a public employee. The officer's union filed a grievance, and the County petitioned PERC for a scope of negotiations determination to restrain binding arbitration. On January 25, 1995, PERC granted the County's request to restrain arbitration.

In *Township of South Brunswick v. South Brunswick PBA Local 166*, A–3418–94T1, a police officer filed a grievance alleging that the chief of police violated provisions of the collective negotiations agreement by reassigning him to a different job on the police force. Subsequently, the Township petitioned PERC for a scope of negotiations determination to restrain arbitration. On January 25, 1995, PERC granted the Township's petition to restrain binding arbitration of the job-reassignment dispute.

In *County of Hudson v. New Jersey State Patrolmen's Benevolent Association, Local No. 51*, A–4698–94T1, the County imposed separate five-day and three-day suspensions on a police lieutenant for, respectively, threatening another police officer and for refusing to follow a superior officer's directive. The union filed a grievance and the County petitioned PERC for a scope of negotiations determination to restrain arbitration. On March 27, 1995, PERC granted the County's request to restrain arbitration.

In *Borough of Hopatcong v. PBA Local 49*, A–0371–95T5, the Borough suspended a police officer for two days for allegedly violating both a departmental rule concerning sick and injury leave as well as a procedure concerning job-related injuries. In the course of imposing the suspension, the Borough was alleged to have violated the employee's procedural rights by failing both to bring charges against him within forty-five days of the culpable incident and to conduct a hearing before imposing discipline. The union filed a grievance, and the Borough petitioned PERC for a scope of negotiations determination to restrain binding arbitration. On March 27, 1995, PERC granted the Borough's request to

restrain arbitration of the grievance to the extent that the Borough either contested the merits of the two-day suspension or sought to have an arbitrator sit as a hearing officer. However, PERC "declined to restrain arbitration to the extent that the grievance claimed violations of the officer's procedural rights to have charges brought within 45 days and to receive a hearing before any discipline was imposed." On July 28, 1995, PERC also denied the Borough's motion for reconsideration.

While the appeals were pending, we granted the motion of the State to appear as amicus curiae in the consolidated appeals and the motions of the New Jersey State Lodge, The Fraternal Order of Police and the New Jersey State Policemen's Benevolent (PBA) to appear as amici curiae in A–3416–94T1, A–3418–94T1, and A–4698–94T1.

As noted earlier, the principal question on appeal is whether a minor disciplinary action involving a Civil Service employee is arbitrable. PERC answered this question in the affirmative for non-police employees and in the negative for police employees.

## II. Historical Development

Case law interpreting the relevant statutes before the recent amendment to *N.J.S.A.* 34:13A–5.3 states clearly that PERC should not have based its decisions on the distinction between police and non-police Civil Service employees. Instead, the critical distinction was between those employees who have Civil Service status and those who do not. Civil Service employees who are involved in a minor disciplinary action could not have a resulting grievance submitted to binding arbitration, while non-Civil Service employees could. *State v. State Troopers Fraternal Ass'n,* 134 *N.J.* 393, 400–13, 634 *A.*2d 478 (1993).

Before the 1996 amendment, this dispute centered on our Supreme Court's interpretation of the 1982 "discipline amendment" to *N.J.S.A.* 34:13A–5.3, *L.* 1982, *c.* 103, which is part of the New Jersey Employer–Employee Relations Act, *N.J.S.A.* 34:13A–1 to –29. Although all of the PERC decisions and the *State*

*Troopers* case were based on this Act, the 1996 amendment so radically changed the applicable law that we must reanalyze the law in light of this change.

As originally enacted, *N.J.S.A.* 34:13A–5.3 required public employers to negotiate in good faith with the majority representative of public employees concerning "grievances and terms and conditions of employment." *L.* 1968, *c.* 303, § 7. However, the Act did not define what was meant by "terms and conditions of employment" and did not specify which terms were negotiable and which terms were not. *See State v. State Troopers Fraternal Ass'n, supra,* 134 *N.J.* at 401, 634 *A.*2d 478. As a result of this lack of definitions, courts were left to delineate on a case-by-case basis whether specific subjects were negotiable between public employers and public employees. *Id.* at 401–08, 634 *A.*2d 478.

By 1981, case law had developed to the point that the Appellate Division in *State v. Local 195, IFPTE,* 179 *N.J.Super.* 146, 153, 430 *A.*2d 966 (App.Div.1981), *certif. denied,* 89 *N.J.* 433, 446 *A.*2d 158 (1982), and *City of Jersey City v. Jersey City Police Officers' Benevolent Ass'n,* 179 *N.J.Super.* 137, 138–39, 430 *A.*2d 961 (App. Div.1981), *certif. denied,* 89 *N.J.* 433, 446 *A.*2d 158 (1982), had construed *N.J.S.A.* 34:13A–5.3 to mean that "no aspect of the disciplinary process between public employers and employees was negotiable." *New Jersey Turnpike Auth. v. New Jersey Turnpike Supervisors Ass'n,* 143 *N.J.* 185, 192, 670 *A.*2d 1 (1996).

The Legislature was evidently displeased with these decisions because on February 1, 1982, Assembly Bill 706 was introduced for the express purpose of overturning *State v. IFPTE.* The Sponsors' Statement accompanying Assembly Bill 706 provided in pertinent part:

> In June of 1981 the Appellate Division of the State Superior Court, in *State of New Jersey v. Local 195 IFPTE and Local 518, SEIU,* 179 *N.J.Super.* 146, 430 *A.*2d 966, ruled that disciplinary determinations did not fall within the scope of mandatory negotiations and that collective agreements could not, therefore, provide for the submission to binding arbitration of contested disciplinary actions.

> This bill [Assembly Bill 706] would overturn that court ruling so as to give meaning to the State Constitution's guarantee of the right of public employees to

"present ... their grievances and proposals through representatives of their own choosing" (Article I, paragraph 19).... The above amendments also empower public employers to negotiate binding arbitration procedures for disciplinary disputes....

After passage, Assembly Bill 706 was conditionally vetoed by Governor Kean. In a message to the Legislature dated May 3, 1982, the Governor specified those provisions of the bill that triggered his veto. Pertinent to this appeal, the Governor stated:

The bill [Assembly Bill 706] ... would permit public employees with tenure or civil service protection to negotiate for binding arbitration of those minor disciplinary disputes which are not covered by the tenure or civil service laws. I recommend that changes in the disciplinary procedures involving employees with special statutory protection be done in the context of reviewing those statutes. The concern I would like addressed in this bill is the ability of those public employees who have no special statutory protection to negotiate for meaningful review of disciplinary actions. None of the changes I propose, however, are intended to prevent negotiation of internal disciplinary procedures which do not result in binding arbitration provided those procedures do not replace any existing statutory mechanism.

Accordingly, I recommend that the bill be amended to provide that contract provisions for binding arbitration will not apply to public employees who already have special statutory protection and to provide that the statutory appeal procedures shall prevail over the contract ones.

Subsequently, the Legislature passed another bill amending *N.J.S.A.* 34:13A–5.3, Assembly Bill 1383, which was also conditionally vetoed by Governor Kean, as explained in his message to the Legislature dated June 30, 1982.[1] Thereafter, the Legislature reenacted Assembly Bill 706, thus passing the "discipline amendment" and incorporating the recommendations made by Governor Kean in his veto messages. *See L.* 1982, *c* 103. These efforts are all explained in more detail in *State v. State Troopers Fraternal Ass'n, supra,* 134 *N.J.* at 412, 634 *A.2d* 478.

---

[1] Respondents in four of the consolidated appeals make much of this second Assembly bill, arguing that the New Jersey "Supreme Court misstated the legislative history of the discipline amendment" in its opinion in *State v. State Troopers Fraternal Ass'n, supra,* 134 *N.J.* at 411–12, 634 *A.2d* 478. A review of Assembly Bill 1383 and the Governor's resulting veto message to the Legislature reveals, however, that there was no misstatement by the Court, but rather a tacit recognition that Assembly Bill 706, and not Assembly Bill 1383, contained the principal content of the enacted amendments to *N.J.S.A.* 34:13A–5.3.

To understand the effect of the 1996 amendments, we must again trace the history of the statute and the case law interpreting it. The "discipline amendment" to *N.J.S.A.* 34:13A–5.3 became effective on July 30, 1982. *N.J.S.A.* 34:13A–5.3 then stated in pertinent part:

> In addition, the majority representative [of the public employees] and designated representatives of the public employer shall meet at reasonable times and negotiate in good faith with respect to grievances, *disciplinary disputes,* and *other* terms and conditions of employment. *Nothing herein shall be construed as permitting negotiation of the standards or criteria for employee performance.*
>
> . . . .
>
> Public employers shall negotiate written policies setting forth grievance *and disciplinary review* procedures by means of which their employees or representatives of employees may appeal the interpretation, application or violation of policies, agreements, and administrative decisions, *including disciplinary determinations,* affecting them, provided that such grievance *and disciplinary review* procedures shall be included in any agreement entered into between the public employer and the representative organization. Such grievance *and disciplinary review* procedures may provide for binding arbitration as a means for resolving disputes. *The procedures agreed to by the parties may not replace or be inconsistent with any alternate statutory appeal procedure nor may they provide for binding arbitration of disputes involving the discipline of employees with statutory protection under tenure or civil service laws.* Grievance *and disciplinary review* procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement.
>
> [Emphasis added. The underlined phrases and sentences were added to *N.J.S.A.* 34:13A–5.3 by the 1982 "discipline amendment"].

Of particular significance to these appeals is the amended statute's explicit provision that any disciplinary review procedures agreed to by the parties in a collective negotiations agreement may not "provide for binding arbitration of disputes involving the discipline of employees with statutory protection under tenure or civil service laws." *N.J.S.A.* 34:13A–5.3.

Despite that explicit provision, within two years of the passage of the discipline amendment, this court determined that *N.J.S.A.* 34:13A–5.3, as then amended, still authorized binding arbitration, but only of *minor* disciplinary actions involving Civil Service employees where there was no appeal mechanism available under the Civil Service laws. *See Bergen County Law Enforcement*

*Group v. Bergen County Board of Chosen Freeholders,* 191 *N.J.Super.* 319, 326–27, 466 *A.*2d 963 (App.Div.1983), and *Communications Workers of Am. v. Public Employment Relations Comm'n,* 193 *N.J.Super.* 658, 662, 475 *A.*2d 656 (App.Div.1984) (both found "highly questionable" in *State v. State Troopers Fraternal Ass'n, supra,* 134 *N.J.* at 412–13, 634 *A.*2d 478, as is more fully explained *infra* ).

Thereafter, in 1986, the Legislature passed legislation repealing most of the Civil Service laws and replacing them with a new Civil Service Act, *N.J.S.A.* 11A:1–1 to 12–6. *L.* 1986, *c.* 112. Pertinent to this appeal, the new Civil Service Act for the first time provided a statutory appeals procedure for Civil Service employees involved in minor disciplinary actions, that is, disciplinary actions where the penalty imposed on the employee amounted to a suspension of five days or less. However, *N.J.S.A.* 11A:2–16 stated that:

> [i]f a State employee receives a suspension or fine of five days or less, the employee may request review by the board under standards and procedures established by the board or appeal pursuant to an alternate appeal procedure where provided by a negotiated contract provision. *If an employee of a political subdivision receives a suspension or fine of five days or less, the employee may request review under standards and procedures established by the political subdivision or appeal pursuant to an alternate appeal procedure where provided by a negotiated contract provision.*

> [Emphasis added].

*N.J.S.A.* 11A:2–16 apparently was the Legislature's response to Governor Kean's recommendation that the Civil Service statutes be reviewed and reformed to provide for an appeals mechanism for all disciplinary actions involving Civil Service employees. *See Conlon v. Middlesex Dep't of Corrections,* 278 *N.J.Super.* 401, 407, 651 *A.*2d 128 (Law Div.1994) (where the court reached a similar conclusion). Significantly, however, *N.J.S.A.* 11A:2–16 did not explicitly authorize binding arbitration as an available appeals procedure for State Civil Service employees.

In *State v. State Troopers Fraternal Ass'n, supra,* the Court addressed the question of "whether the so-called 'discipline amendment' to *N.J.S.A.* 34:13A–5.3, *L.* 1982 *c.* 103, obligated the New Jersey Division of State Police ... to engage in collective

negotiations concerning procedures, including binding arbitration, to review disciplinary determinations affecting state troopers." 134 *N.J.* at 395, 634 *A*.2d 478. The Court answered that question in the negative, holding that "the Legislature did not intend the discipline amendment to apply to the State Police. . . ." *Id.* at 418, 634 *A*.2d 478. The Court similarly determined that the discipline amendment did not apply to county Civil Service police officers because of the statutory Civil Service appeals procedures available to those officers. *Id.* at 413, 634 *A*.2d 478. Finally, after reviewing the statutory bases underlying the discipline of the State Police, who were not covered by the Civil Service statutes, the Court determined that it could not "conceive that the Legislature intended the discipline amendment to apply to only the State Police and to no other major police department in the State." *Id.* at 418, 634 *A*.2d 478. Accordingly, the Court essentially refused to construe the discipline amendment to compel the State Police to submit to binding arbitration any minor disciplinary actions involving the non-Civil Service state troopers. *Id.* at 420, 634 *A*.2d 478.

Pertinent to the appeals before us, the *State Troopers* Court stated by way of *dictum:*

> Although the issue is not before us, we consider highly questionable the holdings in *Communications Workers of America, AFL–CIO v. Public Employment Relations Commission,* 193 *N.J.Super.* 658, 475 *A*.2d 656 (App.Div.1984) and *Bergen County Law Enforcement Group v. Bergen County Board of Chosen Freeholders,* 191 *N.J.Super.* 319, 466 *A*.2d 963 (App.Div.1983), that the discipline amendment authorizes binding arbitration of minor disciplinary actions for which no appeal lies under the Civil Service statutes. As noted, Governor Kean's conditional-veto message concerning Assembly Bill 706 explicitly had rejected the provisions of that bill permitting negotiation for binding arbitration of minor disciplinary disputes not covered by the tenure or Civil Service laws, recommending instead that such concerns be addressed by amending the tenure and Civil Service Statutes.[2]
>
> [134 *N.J.* at 412–13, 634 *A*.2d 478.]

---

[2] In *Conlon v. Middlesex Dept. of Corrections, supra,* the court distinguished the *Troopers* Court *dictum* expressing disapproval of the two Appellate Division cases by noting that the Supreme Court "did not address *N.J.S.A.* 11A:2–16," and the "alternate appeal procedures" authorized by that statute. 278 *N.J.Super.* at 407, 651 *A*.2d 128. In effect, the *Conlon* court viewed the two discredited Appellate Division cases as being subsumed within *N.J.S.A.* 11A:2–16 and thus controlling,

While the *State Troopers* Court was evidently aware of *N.J.S.A.* 11A:2–16, the Court apparently did not view that statute as authorizing the binding arbitration of minor disciplinary disputes involving Civil Service police or non-police employees. 134 *N.J.* at 412–13, 634 *A.*2d 478. *N.J.S.A.* 34:13A–5.3, as it then existed, specifically stated that the "procedures agreed to by the parties" may not "provide for binding arbitration of disputes involving the discipline of employees with statutory protection under tenure or civil service laws." According to the Court, this statutory prohibition is very specific and should have controlled under the rule that specific statutory language prevails over general.

In the cases before us, PERC cited *Conlon* as well as the two Appellate Division decisions rejected by the Supreme Court to conclude that the public employers in the seven appeals involving *non-police* Civil Service employees were legally able to agree to submit the minor disciplinary actions at issue to binding arbitration. In contrast, PERC concluded in the three appeals involving Civil Service employees who were police personnel that the public employers lacked the legal ability to agree to the binding arbitration of minor disciplinary actions. PERC opined that the *Troopers* Court had determined that "the disciplinary amendment does not authorize police officers to seek review of a disciplinary action through binding arbitration." In deciding those eleven cases, PERC reasoned that the critical distinction between those Civil Service employees who could avail themselves of the binding-arbitration appeal procedure and those who could not was the distinction between police and non-police personnel. In effect, PERC reasoned that, because the *Troopers* Court construed the discipline amendment in a case involving state troopers, the Court's restrictions on the availability of binding arbitration as a dispute resolution procedure applied only to police personnel.

despite the Supreme Court's statement to the contrary. *Id.* at 407, 410–11, 651 *A.*2d 128.

A subsequent Supreme Court case, *New Jersey Turnpike Auth. v. New Jersey Turnpike Supervisors Ass'n, supra,* indicated that PERC was mistaken. There, the question before the Court was "whether the imposition of employee discipline based on sexual harassment in the workplace implicates matters of managerial prerogative and, therefore, disciplinary procedures established through collective negotiations, including binding arbitration, cannot be applied in such a case." 143 *N.J.* at 188, 670 *A.*2d 1. In partial answer to this question, the *Turnpike Supervisors* Court determined that the discipline amendment to "*N.J.S.A.* 34:13A–5.3 clearly provides, consistent with the expressed intention of the Legislature, that disciplinary procedures shall be subject to collective negotiations and that those procedures may include binding arbitration." *Id.* at 193, 670 *A.*2d 1. However, the matter did not end with that determination. While binding arbitration was an authorized appeal procedure for public employees, according to the Court, labor contracts providing for binding arbitration of disciplinary disputes could be deemed unenforceable for certain employees. *Id.* at 194–95, 670 *A.*2d 1.

Pertinent to this appeal, the *Turnpike Supervisors* Court explained:

The Act [New Jersey Employer–Employee Relations Act, *N.J.S.A.* 34:13A–1 to – 29] itself expressly addresses whether disciplinary procedures that are authorized as a permissible subject of collective negotiation, including binding arbitration, may be deemed unenforceable. The Act, *N.J.S.A.* 34:13A–5.3, specifically provides:

The procedures [relating to grievances and disciplinary review] agreed to by the parties may not replace or be inconsistent with any alternate statutory appeal procedure nor may they provide for binding arbitration of disputes involving discipline of employees with statutory protection under tenure or civil service laws.

Thus, under the Act an employer may agree to submit a disciplinary dispute to binding arbitration pursuant to the negotiated disciplinary procedures, provided those procedures neither replace nor are inconsistent with any other statutory remedy. If an aggrieved employee has an alternative statutory remedy against alleged unjust discipline, then binding arbitration of that grievance, otherwise authorized as part of negotiated disciplinary procedures, may not be invoked. *See State v. State Troopers Fraternal Ass'n,* 134 *N.J.* 393, 411–12, 634 *A.*2d 478 (1993) (*recognizing that N.J.S.A. 34:13A–5.3 expressly prohibits binding arbitration of disputes involving the discipline of employees with statutory protection under tenure or civil service laws* ). Thus, the issue raised by this section of the Act is

whether an alternative statutory appeal remedy is available to challenge the imposition of discipline based on an accusation of sexual harassment.
[143 *N.J.* at 194–95, 670 *A.*2d 1 (emphasis added).]

The *Turnpike Supervisors* Court therefore concluded that the supervisor there had no alternative statutory appeal remedy. *Id.* at 195, 670 *A.*2d 1.

In the appeals before us, except for the *Borough of Hopatcong* case, the employees are covered by the new Civil Service Act, and they therefore have available the statutory appeal remedy for minor disciplinary action provided by *N.J.S.A.* 11A:2–16. That remedy, before the recent amendment to *N.J.S.A.* 34:13A–5.3, had only one pertinent restriction, as recognized by the *Turnpike Supervisors* Court: there could be no binding arbitration of a disciplinary action because *N.J.S.A.* 34:13A–5.3 prohibited Civil Service employees from availing themselves of that remedy. Thus, under the *Turnpike Supervisors* Court's rationale, a contract term within the collective negotiations agreement providing for binding arbitration would be unenforceable. 143 *N.J.* at 194–95, 670 *A.*2d 1.

If the new amendment was inapplicable to these cases, PERC would have erred when it determined that non-police Civil Service employees could have their minor disciplinary disputes submitted to binding arbitration. The reasoning expressed in both *State Troopers* and *Turnpike* plainly indicates that binding arbitration was not an available review procedure for disciplinary actions involving police or non-police Civil Service employees. Had the statute not been amended, the non-police cases would have been reversed, and the police cases affirmed, because the arbitration remedy would have been unavailable. The employees would have been left to their remedies by judicial actions in lieu of prerogative writs. *See Cermele v. Township of Lawrence,* 260 *N.J.Super.* 45, 47–49, 615 *A.*2d 264 (App.Div.1992) (applying *N.J.S.A.* 11A:12–16 in substantially different circumstances). In short, if the recent statutory amendment was inapplicable, we would have had no cause to proceed beyond the Supreme Court's statements in *State Troopers* and *Turnpike Supervisors.*

### III.  The 1996 Act

On September 12, 1996, while these eleven appeals were pending before us, PERC's counsel sent a letter informing this court that legislation, part of the Law Enforcement Officer's Protection Act ("Protection Act"), amending *N.J.S.A.* 34:13A-5.3, had been signed by the Governor on the previous day, effective 120 days hence.  On October 10, 1996, we received correspondence from the attorney for Local 3044, AFSCME, providing us with the Assembly Appropriations Committee Statement to A. 1836, which became the Protection Act. The Statement described the amendment of this section as a "clarification" of the prior law.  On January 31, 1997, we received from PERC's counsel a copy of *City of East Orange and PBA Local 16*, PERC No. 97–85, issued January 31, 1997, interpreting the amendment as retroactive in effect.

The Protection Act amended various existing statutes in addition to *N.J.S.A.* 34:13A-5.3. *See L.* 1996, *c.* 115 ("Chapter 115"). Pertinent to these appeals, the Protection Act amended *N.J.S.A.* 34:13A-5.3 by effectively repealing much of the 1982 disciplinary amendment to that statute.  As amended by the Protection Act, *N.J.S.A.* 34:13A-5.3 now provides in the relevant section:

> The procedures agreed to by the parties may not replace or be inconsistent with any alternate statutory appeal procedure nor may they provide for binding arbitration of disputes involving the discipline of employees with statutory protection under tenure or civil service laws, except that *such procedures may provide for binding arbitration of disputes involving the minor discipline of any public employees protected under the provisions of section 7 of P.L.1968, c. 303 (C. 34:13A-5.3), other than [State Police] public employees subject to discipline pursuant to R.S. 5.3:1-10....*  For the purposes of this section, minor discipline shall mean a suspension or fine of *less than five days* unless the employee has been suspended or fined an aggregate of 15 or more days or received more than three suspensions or fines of five days or less in one calendar year.
>
> [*L.*  1996, *c.* 115, § 4 (emphasis added).]

As is apparent, the amended *N.J.S.A.* 34:13A-5.3 now permits binding arbitration as a procedure to resolve minor disciplinary actions involving employees such as all of those in the present appeals.  Moreover, because "minor discipline" is defined as less than a five-day suspension, the amended statute could be

applied to seven or ten of the eleven present appeals.[3] The question is whether such application should be allowed.

To determine whether a statute should be applied prospectively or retroactively, our duty is to ascertain the intention of the Legislature. *Twiss v. State, Dep't of Treasury*, 124 *N.J.* 461, 466–70, 591 *A.*2d 913 (1991). The Supreme Court has "adopted a straightforward test to determine whether legislation should be given prospective or retroactive effect." *Bunk v. Port Auth. of N.Y. & N.J.*, 144 *N.J.* 176, 193, 676 *A.*2d 118 (1996). First, a determination is made whether the Legislature intended to give the statute retroactive application. *Ibid.* Second, if the Legislature intended retroactive application, a determination is then made whether retroactive application of the statute will result in an unconstitutional interference with vested rights or a manifest injustice. *Ibid.* "In applying this test generally, there are three circumstances that will justify a retroactive application of a statute: (1) where the Legislature has declared such an intent, either explicitly or implicitly; (2) where the statute is curative; and (3) where the expectations of the parties warrant retroactive application." *In re D.C.*, 146 *N.J.* 31, 50–51, 679 *A.*2d 634 (1996).

Militating towards a prospective application is the fact that the Legislature, just prior to adopting the statute, changed its effective date from the date of adoption to 120 days from that date. One could reason that if the statute were to be applied retroactively, there would be no basis for moving its effective date ahead by four months. This reasoning, however, would overlook the multiple provisions of Chapter 115. The Protection Act provided enhanced sentences for murderers convicted of killing law enforcement officers but who escaped the death penalty; it amended the New Jersey Tort Claims Act by extending immunities for law

---

[3] Three of the appeals involve five-day suspensions, while another involves a termination of employment. As to the suspensions of precisely five days, we discuss *infra* the apparent inconsistency between the wording of this section ("less than five days") and *N.J.S.A.* 11A:2–14 and –16, limiting civil service to suspensions or fines of "five days or less."

enforcement officers lending good faith assistance to accident victims; it required HIV and AIDS testing to protect law enforcement officers; it established a training and equipment fund for officers; and it required law enforcement agencies to adopt internal affairs guidelines.[4]  In all of these aspects, the Act required preparation for its implementation and thus might well be construed as prospective, especially in view of the 120-day postponement of its effective date.

In two aspects, however, the Act affected procedural protections for law enforcement officers, one in the area of discipline in counties or municipalities that had not adopted Title 11A (Civil Service), and the other the provisions amending the New Jersey Employer–Employee Relations Act here under review.  In these instances there was no statement that the Act's provisions should not supersede any existing contractual agreements.  To the contrary, the Committee Statement both times expressly provided that the amendments clarified the existing law.  With respect to the section here under review, the statement provided that the Act would:

> (7) Clarify that, by agreement with the employer, binding arbitration may be adopted as a procedure for disputes involving minor discipline for all public employees (including law enforcement officers) protected under the "New Jersey Employer–Employee Relations Act," P.L.1941, c. 100 (C. 34:13A–1 et seq.), except for members and officers of the State Police.

> [Assembly Appropriations Committee Statement to A. 1836 dated June 13, 1996].

In what apparently is the only legislative history, we thus see a statement that the amendatory language is curative; it clarifies the Legislature's intention concerning the original Act, notwithstanding the common law development to the contrary.

In addition to this legislative commentary on the amendment, we have been provided with PERC's decision in, *City of East Orange and PBA Local 16,* PERC No. 97–85 (January 31, 1997).

---

[4] Incidentally, this latter section, now *N.J.S.A.* 40A:14–181, stated in this instance that such guidelines "shall not supersede any existing contractual agreements."  Thus, when the Legislature did not want part of this amendment to affect existing contracts, it so stated.

In this decision, PERC passed upon minor discipline, a one-day suspension and a four-day suspension, given to two officers by the City of East Orange. In scope arbitration, not considering the contractual arbitrability or merits of the grievances, PERC first recognized the 1993 Supreme Court decision in *State Troopers* and the subsequent passage of Chapter 115 amending *N.J.S.A.* 34:13A–5.3. In that case, as in the ones before us, PERC then noted that the grievances and demand for arbitration had been pending before the effective date of the new amendment. It referred to the treatment by this court of the previous amendment to section 5.3 as "ameliorative or curative" and thus warranting retroactive application. *Communications Workers v. Public Employment Relations Comm'n,* 193 *N.J.Super.* 658, 475 *A.*2d 656 (App.Div.), *certif. denied as to two of the five consolidated appeals,* 99 *N.J.* 169, 190, 491 *A.*2d 678 (1984), *disapproved on other grounds in State Troopers,* 134 *N.J.* 393, 634 *A.*2d 478 (1993). PERC quoted our statement:

> Where the parties have sought the favored remedy of arbitration as the means of dispute resolution, the fact that the earlier law thwarted these expectations should not preclude us from applying the Legislature's ameliorative action to all pending cases.

[193 *N.J.Super.* at 664, 475 *A.*2d 656].

Even without reference to the legislative history we have just cited, PERC, the agency in whom the Legislature reposed the confidence to administer the statute, construed the amendment to have retroactive effect.

The various public employers argue that the contracts which provided for binding arbitration were negotiated against the then-existing statute and common law. Thus, they claim, vested rights are adversely affected if we construe this statute as retroactive. We have just analyzed the state of the law as it existed prior to the amendment and we agree, based upon *State Troopers* and *Turnpike Supervisors,* that it precluded binding arbitration of minor discipline. Yet, attorneys negotiating labor agreements might also have found the law to have been unsettled. The Supreme Court's statements on the subject were expressly *dicta;*

there were then existing two Appellate Division decisions and a Law Division decision holding to the contrary; and the statute and prior legislative history were somewhat ambiguous. It appears disingenuous for parties who have negotiated into their agreements provisions for binding arbitration now to say, after the binding arbitration is expressly authorized by statute, that they had not intended that these provisions of their agreement would be enforceable. We could well impute an intention on the part of employers and unions alike that they would comply with such binding arbitration if and when it was permitted by law. Furthermore, the same language in their contracts would become effective 120 days following the adoption of the statute even if the statute's effect were deemed prospective as opposed to retroactive.

Lastly, the aim of the Legislature in enacting Chapter 115, *L.* 1996, as stated in the title to the Act, was to protect law enforcement officers. We can divine no reason why the Legislature would state that it was clarifying the prior law yet withhold the protection of the Act from officers (or other public employees covered by this amendment) whose claims had matured prior to 120 days following the adoption of the Act. It appears to us that the Legislature would not have intended that employees such as those whose claims are before us should be forced into separate Law Division actions in lieu of prerogative writs, with attendant costs, in order to review suspensions of one through five days. We therefore determine that the effect of the amendment of *N.J.S.A.* 34:13A–5.3 is retroactive and governs the cases before us.[5]

---

[5] We have not lost sight of the principle that "statutes generally should be given prospective application." *In re D.C., supra,* 146 *N.J.* at 50, 679 *A.2d* 634; *Phillips v. Curiale,* 128 *N.J.* 608, 615, 608 *A.2d* 895 (1992). As noted, however, we have determined that the purpose of this amendment and the legislative history evince a contrary legislative intent. *See Dewey v. R.J. Reynolds Tobacco Co.,* 121 *N.J.* 69, 95, 577 *A.2d* 1239 (1990) (citing *Pennsylvania Greyhound Lines v. Rosenthal,* 14 *N.J.* 372, 381, 102 *A.2d* 587 (1954)).

## IV. Inconsistent "Five Day" Language

█ As we noted earlier, there is an obvious problem dealing with the language inconsistencies between this Act and the Civil Service Act, *N.J.S.A.* 11A:2–14 to –16. While Chapter 115 is applicable to minor discipline of "less than five days," the cited Civil Service sections apply to suspensions or fines of "five days or less." We see this as nothing more than a drafting error since the obvious intention of the new amendment was to permit the minor discipline for all public employees (with the exception of State Police) to be subject to binding arbitration. The additional language of the exception where an employee has received an aggregate of fifteen days suspension or more than three minor suspensions (correctly employing the "five day or less" language) or fines in a year was clearly meant to track the same language in *N.J.S.A.* 11A:2–14.

It would make no sense for Civil Service employees to have the right of appeal for suspensions of six days or more and all public employees to have the right of binding arbitration for suspensions of four days or less, but to require that suspensions of precisely five days be left in a limbo relegated to actions in lieu of prerogative writs. We will therefore construe the language of "less than five days" as "five days or less" in accordance with our understanding of the Legislature's obvious intention. In the event we have misconstrued the Legislature's intention, the Legislature can, of course, by amendment reimpose this gap for suspensions of precisely five days.

## V. Procedural Application

█ We have left open an issue in *Borough of Hopatcong v. PBA Local 49* relating to the arbitration of procedural matters. As noted, we have interpreted the new amendment to *N.J.S.A.* 34:13A–5.3 as permitting agreed binding arbitration to resolve disputes involving minor discipline. We further note that in *New Jersey Turnpike Authority v. New Jersey Turnpike Supervisors Ass'n, supra,* 143 *N.J.* at 195, 670 *A.*2d 1, the Court did not distinguish between the procedural and nonprocedural aspects of

the disciplinary action when describing the statutory prohibition against binding arbitration. The same should be true if the arbitration is permitted.

In fact, this procedural inclusion was also the decision not only in *Borough of Hopatcong v. PBA Local 49,* from which this appeal was taken, but also in PERC's decision in *City of East Orange & PBA Local 160, supra,* in which PERC stated that the union's allegation that "the City committed procedural violations when conducting the hearings would still be mandatorily negotiable and legally arbitrable even if the new legislation were not retroactive," citing *Bethlehem Tp. Bd. of Educ. v. Bethlehem Tp. Educ. Ass'n,* 91 *N.J.* 38, 449 *A.*2d 1254 (1982); *Local 195, IFPTE v. State,* 88 *N.J.* 393, 443 *A.*2d 187 (1982). In the *City of East Orange* case, PERC concluded "that procedures related to the timeliness of disciplinary charges and the holding of a hearing before guilt is determined are mandatorily negotiable so long as they do not conflict with the procedures established by *N.J.S.A.* 40A:14–147 *et seq.*" We note parenthetically that PERC cited the *Borough of Hopatcong* case now before us as authority for this proposition. PERC has personnel and procedures in place to dispose of these procedural claims expeditiously without forcing the parties into piecemeal litigation. We therefore determine that procedural as well as substantive issues relating to minor discipline can be referred to PERC.

## VI. Disciplinary Transfers

In *Township of South Brunswick v. South Brunswick PBA Local 166,* the municipal action involved a transfer of an officer allegedly for disciplinary reasons, a motive denied by the municipality. The assignment of an employee within his or her job classification is a matter of management prerogative unless it has been limited by agreement, *Local 195, IFPTE v. State,* 88 *N.J.* 393, 417, 443 *A.*2d 187 (1982), or unless it is done to defeat the unit's staffing rights. We see nothing in this agreement infringing on this prerogative. The issue, therefore, is not one of discipline at all.

We distinguish the reassignment from the union's claim that the Township should have posted the position and considered any applicant who may have volunteered for the assignment before it reassigned the officer. This is precisely the distinction made by PERC in its decision issued January 25, 1995. In this case, it appears that the officer actually received a pay raise because of the transfer occasioned by the early retirement of several police officers, and the transfer was made only after the recommendation of a staff committee. The change in work hours was incidental to the transfer. The only assertion the officer made that would indicate that the transfer was disciplinary was that it might have been in retaliation for union activities. If this were so, the case would not be one of discipline, but rather, as indicated by PERC, the possible basis of an unfair labor practice charge. As this is not a case of discipline to be governed by the previous discussions, we summarily affirm PERC's decision which was not arbitrary, capricious or unreasonable and was supported by substantial credible evidence. *Campbell v. Department of Civil Serv.*, 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963).

## VII. Disciplinary Dismissal of a Provisional Employee

The other aberrant case involves the appeal of PBA Local 199 from the PERC decision restraining arbitration of its claim against the County of Union for the dismissal of a provisional correctional officer. The discharge apparently was based upon an off-duty incident. In its decision of January 25, 1995, PERC correctly interpreted the law as it existed at that time, namely that the earlier statutory amendment did not apply to police officers. The new amendment pursuant to Chapter 115, *L.* 1996 amended the statute so that an agreement "may provide for binding arbitration of disputes involving the minor discipline of any public employees." Minor discipline, however, is defined (subject to the minor judicial surgery noted earlier) as "suspension or fine of less than five days . . . ."

The dismissal of this provisional employee may or may not have been in breach of a contractual right, but it was not the imposition

of a "suspension or fine of less than five days," or even of "five days or less." But this provisional employee is not protected by the provisions of the Civil Service law, even as the County's guidelines might be affected by the newly-enacted *N.J.S.A.* 40A:14–181. His rights, if any, can be vindicated only in an action in the Law Division in lieu of prerogative writs. *See Cermele v. Township of Lawrence, supra,* 260 *N.J.Super.* at 48–49, 615 *A.2d* 264. The provisional officer should not be prejudiced by attempting to seek a right of appeal to the Department of Personnel and to this court. The matter may be transferred to the Law Division upon a motion by the employee pursuant to *R.* 1:13–4(a) or (b) filed within thirty days of the date of this opinion.

## VIII. Conclusion

In conclusion, we reiterate: The *City of Orange Township* matter has been settled. In the *South Brunswick PBA Local 166* matter, the sole issue before PERC will be to determine if the reassignment should have been posted to develop a list of volunteers. The *Union County* matter is dismissed, subject to a motion to transfer the claim to the Law Division. As to the balance of the cases, we determine for the reasons stated that the cases in which PERC found, albeit on different grounds, that it had jurisdiction to review the petitions, the decisions are affirmed. The decisions involving non-police employees, where PERC determined it had no jurisdiction, are reversed. These cases are remanded to PERC for further proceedings.